ven's ability is not a property interest as it is defined by statute.

Moreover, that this so-called "interest" exists at all is a quirk of the recording statutes themselves. These statutes are designed to assign priorities among competing stakeholders in a piece of property. They are not designed to create a property interest in a dishonest grantor who can continue to give away the same piece of property until one of his buyers records the transaction. Thus, as a matter of policy as well, we reject Finalco's argument that Steven retained a property interest in the Glendora property after he executed the Marital Agreement.

### V.

For the foregoing reasons, we AFFIRM the decision of the Bankruptcy Appellate Panel granting Steven a discharge of his debts.

**R.A. ARGUETA, husband; Mary Argueta, wife; Grupo Sal Corporation, Plaintiffs–Appellants,**

v.

**BANCO MEXICANO, S.A.; Francisco Suarez Davila; Alonso Cuevas del Villar, Defendants–Appellees.**

No. 95–15118.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1996.

Decided June 20, 1996.

Armand Salese, Tucson, Arizona, for appellants.

William J. Mays, Houston, Texas, for appellees.

Before: SNEED, NORRIS and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

R.A. Argueta, his wife, Mary Argueta, and Grupo Sal Corporation ("Appellants") appeal the district court's order granting appellee Banco Mexicano, S.A.'s motion to dismiss the First Amended Complaint ("FAC") pursuant to a forum selection clause requiring actions arising from the agreement between the parties to be brought in Mexico. Appellants contend that enforcement of the forum selection clause would be unreasonable because they would not receive a fair trial in Mexico. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## FACTS [1]

This appeal arises from two loan agreements between R.A. Argueta ("Argueta"), a citizen of El Salvador and lawful permanent resident of the United States, and Banco Mexicano.[2] The first agreement (hereinafter "San Carlos Loan") involved property in San Carlos, Sonora. In 1980, Grupo Sal Corporation, a Cayman Islands corporation owned by Argueta and other shareholders, purchased 215 improved lots in San Carlos. Argueta arranged to redeem the shares held by the other shareholders and to promote the sales of the lots by himself. He borrowed $2,000,-000 (U.S.) from Banco Mexicano on November 1, 1989, to finance the buy-out. The San Carlos Loan agreement, which was not contained in the record, provided that the $2,000,000 be disbursed in a lump sum, and that Argueta's payments on the loan be submitted to Banco Mexicano's New York City office. The agreement also included a forum selection clause, designating Mexico as the proper forum for any disputes concerning the agreement.[3]

1. The information contained in this section comes largely from Appellants' brief on appeal, the FAC, and the affidavit of R.A. Argueta. Banco Mexicano disputes Appellants' characterization of the facts, but provides no evidence to controvert Appellants' assertions.

2. Prior to commencement of this action, Banco Mexicano was operated by the Mexican government and was then called Organizacion Somex,

S.A. Today, Banco Mexicano is a privately-owned institution. For purposes of this appeal, we assume that Banco Mexicano properly replaces Somex as the defendant.

3. The forum selection clause in the San Carlos Loan agreement, as translated, provides:

For the results of some possible controversy over a cancellation, fulfillment, interpretation or scope of the present contract, the parties

Argueta states that, contrary to the loan agreement, the bank disbursed the amount in several installments and he had to sign promissory notes for each disbursement to be due within 60–90 days instead of six months. Although bank officials assured Argueta that the promissory notes would be renewed upon expiration to allow him six months to pay those notes, the bank did not renew the terms or respond to his inquiries about the notes.

The second loan agreement at issue, which also contained a forum selection clause designating Mexico as the proper forum for resolving disputes,[4] involves Argueta's investment in an agroindustry project (hereinafter "Papain Project"). On March 13, 1990, Papaina de Occidente, S.A. de C.V., a Mexican corporation owned in part by Argueta, borrowed $5,930,000 (U.S.) from Banco Mexicano to invest in the cultivation of papayas (hereinafter "Papaina Loan"). Argueta alleges that the bank withheld funds from the project until the corporation acceded to certain modifications of the loan agreement.

On August 16, 1990, Pedro Maldonaldo, Banco Mexicano's Regional Coordinator, requested that Argueta meet with the bank's Vice–President German Francisco Moreno at the bank's Mexico City headquarters to discuss the Papain Project and the promissory notes related to the San Carlos Loan. The meeting was scheduled for August 21, 1990. Argueta traveled from his home in Arizona to Mexico City on August 20. On the same day, Banco Mexicano filed a complaint with the Office of the Procuraduria General de la Republica ("PGR"), the Mexican Attorney General's Office, accusing Argueta and Carlos Antonio Verdugo Orozco ("Verdugo"), a former director of the bank's Guadalajara branch, of criminal fraudulent transactions.

On the day of the meeting, Moreno suggested that they conclude the meeting at the end of the week. Later at 1:00 a.m. on August 22, four PGR agents took Argueta from his hotel to a PGR office and interrogated him regarding his relationship with Verdugo. After Verdugo was brought to the office, the PGR held a press conference at 7:00 p.m. to announce that Argueta and Verdugo were responsible for fraudulent transactions. Thereafter, Argueta heard Verdugo being beaten and was told more than once that he should admit to "everything." He was then led to another room where eight Banco Mexicano employees and lawyers and PGR representatives interrogated him and reformulated his answers for the record.

Argueta was unable to contact his family or an attorney at any time and remained in a locked cell in the PGR office until August 24 or 25, at which time he was transferred to the Reclusorio Preventivo Norte prison facility. On August 25, a Banco Mexicano officer filed formal charges against Argueta, alleging that Argueta committed fraud by not giving "the bank a valid security interest in the San Carlos lots and in having misdirected loan proceeds." Argueta Aff. at 8.

During Argueta's confinement, after he refused to divest his interest in Papaina de Occidente, Banco Mexicano pressured the other shareholders to dissolve the corporation without Argueta's participation. The bank became a minority owner in Ultrapapaina S.A. de C.V., which was formed to operate the Papain Project. Banco Mexicano thereafter executed a loan agreement to finance the Papain Project and allegedly converted $500,000 (U.S.) of Ultrapapaina's funds, which led to the project's failure.

Also during his confinement, Argueta was provided an attorney who unsuccessfully tried to obtain a judicial hearing on the charges against him. After a year, he retained a new lawyer, Antonio Armendariz,

expressly submit themselves to the Federal Tribunals or the State Courts of Guadalajara, Jalisco or Guaymas, Sonora at the election of [the bank], and the BORROWER expressly relinquishing any other outside domicile (jurisdiction) which would correspond to them.

4. The forum selection clause in the Papaina Loan agreement, as translated, provides in pertinent part:

For the facts of any controversy which may arise with regards to the interpretation or execution of this contract, the parties expressly relinquish any jurisdiction which would correspond to them in accordance with the law for territorial justice and submit themselves to the Tribunals of the First Party—the Judiciary of the Metropolitan Zone of this City.

who, Argueta knew, was acquainted with representatives of Banco Mexicano. Armendariz proposed that Argueta agree to modify the San Carlos Loan agreement—by redocumenting the bank's security interest in the lots, increasing the principal loan balance to include all interest and costs accrued to date, adjusting the interest rate, and setting the maturation of the obligation for two years—in exchange for the bank's withdrawing the charges against Argueta. After agreeing to the proposal, Argueta was released on December 24, 1991, and was authorized to leave Mexico on March 17, 1992. Argueta states that because Banco Mexicano successfully thwarted Grupo Sal Corporation's efforts to sell the San Carlos lots, he was unable to pay the San Carlos Loan when it came due. On December 8, 1993, Banco Mexicano commenced forfeiture proceedings on the San Carlos lots.

After returning to the United States, Argueta retained counsel in Mexico to investigate any remedies he might have had in Mexico with respect to the San Carlos project. The attorney withdrew from representing Argueta, however, after the head of banking at the Ministry of Finance allegedly told him that his law firm would not receive any business from Mexican banks if he continued to represent Argueta.

In 1994, Appellants commenced an action against Banco Mexicano in federal court in the District of Arizona. The FAC[5] alleges a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., relating to the San Carlos Loan and common law causes of action for fraud, breach of contract/breach of the covenant of good faith and fair dealing, and tortious interference with economic expectations, relating to both the San Carlos Loan

and the Papain Project. Pursuant to Federal Rules of Civil Procedure 12(b)(1)-(3), (6)-(7), Banco Mexicano moved to dismiss the action based on the forum selection clauses, lack of subject matter jurisdiction, lack of personal jurisdiction, forum non conveniens, and failure to join indispensable parties. The district court granted the motion solely based on improper venue.

## DISCUSSION

### I. STANDARD OF REVIEW

■ We review the district court's order enforcing the contractual forum selection provision and dismissing the case for improper venue for abuse of discretion. *Spradlin v. Lear Siegler Management Servs. Co.*, 926 F.2d 865, 867 (9th Cir.1991).

### II. FORUM SELECTION CLAUSE

#### A. *Federal Rules of Civil Procedure*

Before addressing the parties' arguments, we note that the parties disagree about how the Federal Rules of Civil Procedure should be applied to a motion to dismiss based on a forum selection clause. Short of suggesting that such a motion should be treated as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, where the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff, Banco Mexicano maintains that it need not controvert Appellants' characterization of the facts on a motion to dismiss. Notwithstanding this argument, Banco Mexicano did submit the affidavits of its attorney and a bank officer to the district court.[6] Appellants, who submitted several exhibits including three affidavits to the district court,[7] argue in their

5. The FAC named Banco Mexicano and two of its officers as defendants; however, only Banco Mexicano was served.

6. Banco Mexicano submitted the affidavit of its attorney, Gabriel Perez Rios Aguilar, stating that the bank's filing of the complaint against Argueta was lawful, Argueta's prosecution was handled according to normal procedures to the bank's knowledge, the bank does not have a complaint against him pending, and the bank has no reason to believe that the PGR would involve itself in any civil litigation between the parties in Mexico.

Banco Mexicano also submitted the affidavit of Craig Lax, executive vice-president of the bank's New York office, stating that that office was not involved in the San Carlos Loan negotiations, does not have any record of disbursing or receiving any funds related to the loan, and was not involved in Argueta's criminal prosecution.

7. Appellants submitted three affidavits in opposition to Banco Mexicano's motion to dismiss. Argueta's affidavit details his arrest and states that he believes that Banco Mexicano falsely accused him of criminal conduct in order to de-

reply brief on appeal that the panel should treat the motion to dismiss as a Rule 12(b)(6) motion that has been converted to a summary judgment motion.

The district court concluded that venue in the District of Arizona was improper in light of the forum selection clause, but did not specify whether it considered the motion as one under Rule 12(b)(3) (dismissal for improper venue) or Rule 12(b)(6). It did, however, consider evidence outside of the pleadings that both parties submitted and its order specifically cited the affidavits of Jack Binns and Gabriel Perez Rios Aguilar in concluding that the Appellants failed to "overcome the strong policy favoring enforcement of a freely negotiated forum selection clause."

We have not yet identified which procedural rule governs a motion to dismiss premised on the enforcement of a forum selection clause. *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1408 (9th Cir.) (affirming nonenforcement of forum selection clause where district court treated Rule 12(b)(6) motion as a speaking motion that was converted to a motion for summary judgment without discussing the applicability of Rule 12(b)(6)), *cert. denied*, — U.S. —, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995); *Spradlin*, 926 F.2d at 868 (affirming dismissal based on forum selection clause under Rule 12(b)(3) without discussing applicability of the rule). *See also Lambert v. Kysar*, 983 F.2d 1110, 1111 n. 1 (1st Cir.1993) (stating that dismissal due to a forum selection clause involved a Rule 12(b)(6) motion, and not a Rule 12(b)(3) motion). *But cf. Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir.) ("A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3).") (citations omitted), *cert. denied*, 506 U.S. 1021, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992).

◼ We conclude that we should treat Banco Mexicano's motion as a Rule 12(b)(3) motion to dismiss for improper venue. Under the Supreme Court's standard for resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). *See also Spradlin*, 926 F.2d at 868 (forum selection clause enforced where appellant "failed to produce *evidence* of inconvenience he would suffer by litigating in Saudi Arabia" or even offer any specific allegations as to his inconvenience) (emphasis supplied); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir.1984) ("Absent some *evidence* submitted by the party opposing enforcement of the clause to establish fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties." (citing *Bremen*, 407 U.S. at 12–19, 92 S.Ct. at 1914–18) (emphasis supplied)). Analysis under Rule 12(b)(3), on the other hand, permits the district court to consider facts outside of the pleadings, and is consistent with the Supreme Court standard for resolving forum selection clause cases.

### B. Analysis

◼ Federal law governs the validity of a forum selection clause. *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir.1988). The enforceability of forum selection clauses in international agreements is controlled by the Supreme Court's

---

prive him of his San Carlos investment. Mary Argueta's affidavit describes her life while Argueta was in custody. Jack Binns, a retired United States foreign service officer, states in his affidavit that after reviewing most of the documents in Argueta's criminal case, he believes that Argueta would not have been arrested but for Banco

Mexicano's "gross and undue influence on the judicial process." In its reply brief below, Banco Mexicano objected to the affidavits as "hearsay, conclusory, argumentative, and factually incorrect." The district court's order did not address the bank's evidentiary objections.

decision in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *Bremen*, the Court first held that forum selection clauses are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is " 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913. The Supreme Court has construed this exception narrowly. A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, *Carnival Cruise Lines*, 499 U.S. at 591, 111 S.Ct. at 1526; *Bremen*, 407 U.S. at 12–13, 92 S.Ct. at 1914; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," *Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Id.* at 15, 92 S.Ct. at 1916. To establish the unreasonableness of a forum selection clause, Appellants have the "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Pelleport*, 741 F.2d at 281 (citing *Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917).

Although *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general. *See Spradlin*, 926 F.2d at 867 (applying *Bremen* to affirm enforcement of a forum selection clause in an employment contract); *Manetti–Farrow*, 858 F.2d at 512 (applying *Bremen* to affirm enforcement of a forum selection clause in an

exclusive dealership contract); *Pelleport*, 741 F.2d at 280 (applying *Bremen* to affirm enforcement of forum selection clause in a domestic contract involving the exhibition of motion pictures).

■ At oral argument before the district court, Appellants "concede[d] that under normal circumstances[,]" the forum selection clauses in the San Carlos Loan[8] and Papaina Loan agreements would be enforceable.[9] They do not challenge enforcement of the forum selection clause on the ground that its inclusion in the San Carlos Loan agreement was procured by fraud, overreaching, or the exercise of undue influence. Rather, Appellants challenge the forum selection clause on the ground that enforcement would be unreasonable because Argueta will be persecuted if he returns to Mexico and will for all practical purposes be deprived of a fair hearing in his breach of contract action against Banco Mexicano. In support of their argument that they will not have a meaningful hearing in Mexico, Appellants cite to immigration cases to demonstrate that Argueta suffered past persecution and has a well-founded fear of future persecution. There is, however, no legal authority for applying legal standards used in the deportation context to forum selection clause cases. Moreover, reliance on such principles is inappropriate. A party's subjective fear of persecution is relevant in deportation cases, *see Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995), but is of no matter in determining the reasonableness of enforcing a forum selection clause against that party. *See Bremen*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513.

■ Appellants maintain that the bank's charges against Argueta were false and were

---

**8.** Appellants apparently argued before the district court that the forum selection clause in the San Carlos Loan agreement involved a permissive and not a mandatory condition. *See McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, (8th Cir.) (not enforcing permissive forum selection clause by, *inter alia*, distinguishing *Bremen* as involving a mandatory forum selection provision), *cert. denied*, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985). However, they do not raise this argument on appeal.

**9.** Appellants argued before the district court that none of the claims in the FAC is premised on the allegations relating to the Papain Project and

that the allegations involving the Papain Project were pled only to illustrate the bank's "evil state of mind" and pattern of behavior. They do not, however, assert this argument on appeal. In light of the incorporation of the allegations related to the Papain Project in the claims for fraud, breach of contract/breach of the covenant of good faith and fair dealing, and tortious interference with economic expectations against the bank, it appears that these claims, as pled, are predicated on the Papain Project. In any event, it is irrelevant whether the forum selection clause in both loan agreements or in only the San Carlos Loan agreement is at issue because the clauses are virtually identical.

filed to force him to modify the San Carlos Loan agreement and ultimately to deprive him of the San Carlos lots. To accomplish this, the bank allegedly colluded with the PGR to imprison him until he agreed to the bank's modifications to the loan agreement. The record shows that Banco Mexicano filed a complaint against Argueta to initiate the PGR's investigation, and that the bank withdrew the charges against Argueta and he was released following his consent to the bank's modifications to the San Carlos Loan agreement. Banco Mexicano's counsel, Gabriel Perez Rios Aguilar, states that "[c]itizens of Mexico have a duty to file complaints [with the PGR] upon belief of criminal wrongdoing," and the bank was merely performing its duty. Appellants argue, however, that Banco Mexicano abused the complaint procedure because the charges against him were false, as evidenced by the charges being withdrawn by the bank once he agreed to the loan modifications. Appellants further argue that Banco Mexicano is capable of arranging to have Argueta arrested again if he returns to Mexico, and therefore it would be unreasonable to hold that Mexico is the proper forum for the action against Banco Mexicano.

The dispositive issue on appeal, as characterized by Appellants, is whether Appellants have established that Argueta is unable to return to Mexico. *See Spradlin,* 926 F.2d at 869 (dicta stating that facts relating to appellant's inability to return to Saudi Arabia would have militated against enforcing the forum selection clause). Appellants' citation to *McDonnell Douglas,* 758 F.2d at 346, is unavailing. *McDonnell* is easily distinguishable. In that case, postrevolutionary conditions in Iran, including the cessation of diplomatic relations between United States and Iran, the state of war between Iran and Iraq, and the suspension of all commercial airline flights to Iran, made litigation in Iran, the designated forum, gravely dangerous if not impossible. *Id.* The Eighth Circuit took judicial notice of the general state of affairs in Iran at the time. *Id.* The Ninth, Second, and Eleventh Circuits have also recognized

that in the early to mid–1980s, Americans could not get a fair trial in Iran. *See Bank Melli Iran,* 58 F.3d at 1412 (citing cases). Here, in contrast, the extraordinary conditions related to Americans traveling to Iran are not present. Rather than requesting that we take judicial notice of the state of affairs in Mexico, Appellants seek judicial notice of alleged specific acts of misconduct by particular individuals against Argueta when he was last in Mexico. We decline to take judicial notice of such circumstances and find that *McDonnell* simply does not support concluding that it would be so gravely dangerous for Argueta to return to Mexico that he would be deprived of his day in court if forced to litigate in Mexico.

We may infer from the fact that the bank dropped its charges against Argueta once he agreed to the modifications to the San Carlos Loan agreement that the bank may have abused the complaint procedure to intimidate Argueta. That fact, however, does not necessarily show that Banco Mexicano will abuse the procedure if Appellants file a civil action against the bank in Mexico. Even assuming that Banco Mexicano filed the original charges against Argueta to intimidate him into modifying the San Carlos Loan agreement, there is no showing that the bank would or could file other charges against him if he were forced to litigate in Mexico.[10] The district court relied on Aguilar's affidavit stating that the bank does not have any criminal charges pending against Argueta. Although Aguilar did not state that the bank will not file any charges against Argueta in the future, the *possibility* that the bank *may* file new charges against Argueta is mere speculation and does not serve as a basis for finding that Argueta is unable to travel to Mexico.

Argueta's statement that a friend warned Argueta that he heard from another friend, who had attended a meeting with Banco Mexicano representatives in Mexico, that it would not be safe for Argueta to travel to Mexico, *see* Argueta Aff. at 14 ¶ 58, is inadmissible hearsay and also does not support a finding that Argueta would be in danger if he were to return to Mexico. Had Appellants

---

**10.** The Mexican newspaper article, dated March 26, 1993, about collusion between Mexican banks and the PGR to collect on defaulted loans,

that was submitted by Appellants does not show that Argueta in particular will be the subject of another criminal complaint filed with the PGR.

presented admissible evidence of Banco Mexicano's threat to file charges against Argueta again, this would be a very different case. For example, a sworn declaration from the person who attended the Banco Mexicano meeting and heard the bank official's alleged comments about Argueta, which is the basis of Argueta's friend's warning to Argueta about not returning to Mexico, may have mitigated against enforcement of the forum selection clause.

Significantly, even if Argueta's fear of returning to Mexico is genuine, Appellants do not provide any information showing that Argueta's physical presence in Mexico is required to pursue the civil action. Although Argueta had difficulty retaining an attorney in Mexico, he does not show that he cannot retain any counsel in Mexico. *See Spradlin*, 926 F.2d at 868–69 (dicta stating that appellant failed to offer even allegations about the availability of counsel in Saudi Arabia to mitigate against enforcing the forum selection clause). There is no evidence that Argueta was unable to retain another counsel in Mexico after his original counsel withdrew.[11] In fact, Argueta states that he has consulted with more than one attorney in Mexico about his case. Without more, Appellants have not carried their burden to show that litigation in Mexico would subject Argueta to risk of physical harm or that Argueta is unable to obtain counsel to represent him in Mexico.

Although the information contained in the record regarding the circumstances of Argueta's last visit to Mexico is troubling, the district court did not commit a clear error of judgment in weighing the relevant factors and concluding that Appellants had not met their burden of showing that enforcement of the forum selection clause would be unreasonable.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of the action.

---

11. Argueta's assertion that the head of banking at the Ministry of Finance once threatened to ruin Argueta's attorney's legal practice if he continued to represent Argueta is inadmissible hearsay.