**KELSO ENTERPRISES, LTD., Plaintiff,**

v.

**M/V WISIDA FROST, her engines, boilers, tackle, machinery, appurtenances, etc., in rem; Master of the M/V Wisida Frost; Wissell II, Ltd., a business entity; and Rederaktienboglaget Gustaf Erikson, a business entity, in personam, Defendants.**

**UNION DE BANANEROS ECUATORIANOS S.A., Plaintiff–Intervenor,**

v.

**M/V WISIDA FROST, et. al., Defendants.**

**No. CV 97–5450 ABC (BQRX).**

United States District Court, C.D. California.

Feb. 4, 1998.

Joseph N. Mirkovich, Steven Y. Otera, Russell & Mirkovich, long Beach, CA, Of Counsel, John R. Keough, Waesche, Sheinbaum & O'Regan, New York City, for Kelso Enterprises, Ltd.

George W. Nowell, Paul B. Arenas, Law Offices of George W. Nowell, San Francisco, CA, for Union De Bananeros Ecuatorianos, S.A.

Alan Nakazawa, David E.R. Woolley, Mitchell F. Ducey, Cogswell, Woolley, Nakazawa & Russell, Long Beach, CA, for M/V Wisida Frost and Wissell II, Ltd.

ORDER RE: DEFENDANTS' MOTION TO DISMISS PURSUANT TO ENGLISH FORUM SELECTION CLAUSE IN BILLS OF LADING

COLLINS, District Judge.

After reviewing the materials submitted by the parties and the case file, it is hereby ORDERED that Defendants' motion to dismiss is GRANTED.

## I. Background

### A. Procedural History

On July 24, 1997, Plaintiff KELSO ENTERPRISES, LTD. ("Kelso") filed a Complaint against M/V WISIDA FROST, her engines, boilers etc. ("the Vessel") *in rem;* MASTER OF THE M/V WISIDA FROST; WISSEL II., LTD., a business entity ("Wissel II"), and REDERIAKTIEBOLAGET GUSTAF ERIKSON, a business entity, *in personam.* Kelso's complaint alleges the following claims: (1) negligence (damage to cargo); (2) negligence (deviation) and (3) tortious interference with contractual relations. Also on July 24, 1997, Plaintiff in Intervention, UNION DE BANANEROS ECUATORIANOS S.A. ("Union") filed a Complaint in Intervention. Union's Complaint alleges the following causes of action: (1) breach of contract, and (2) negligence and intentional acts.

On July 24, 1997, Kelso filed an *Ex Parte* Application for Order Allowing Immediate Discovery. Judge Robbins, the Magistrate Judge assigned to this matter, signed Kelso's proposed order permitting immediate discovery. On July 25, 1997, Kelso and Union (collectively "Plaintiffs") arrested the Vessel based on an alleged maritime lien for cargo damage pursuant to Supplemental Admiralty Rule C. At the time that Plaintiffs arrested the Vessel, Kelso served on counsel for Wissel II, the shipowner of the Vessel, the warrant for arrest, the Order granting immediate discovery and seven deposition subpoenas for depositions set to take place over the weekend. That same day, Union served on counsel for Wissel II the warrant of arrest and the Complaint in Intervention. Also on July 25, 1997, Wissel II filed a Writ in the High Court of Justice in London, pertaining to the same claims. Plaintiffs make in the instant action. *See* Writ filed in the High Court of Justice, attached as Exhibit A to Declaration of Roderick White ("White Decl.") at ¶ 3, filed in support of Defendants M/V Wisida Frost and Wissel II's ("Defendants") motion to dismiss action pursuant to English forum selection clause in Bills of Lading ("Motion").

On July 28, 1997, Wissel II filed an *Ex Parte* Application for Dismissal Under Fed. R.Civ.P. 12(b)(3) ("*Ex Parte* Application"). After a hearing before Magistrate Judge Robbins on July 28, 1997, where counsel for Plaintiffs and Defendant were present, a Minute Order was issued containing the following information:

The arrest of ship shall continue.

Document production shall proceed both as to systems and operational documents. However, documents need not be produced prior to July 30, 1997 at 12:00 noon.

There shall be no repairs or alterations or resettings of computers on the ship. Visual inspections only shall be allowed by all parties. Any invasive testing shall only be done with the stipulation of all parties and as a joint effort.

Deposition discovery shall be stayed until August 1, 1997 unless otherwise stipulated. The deputy clerk for Magistrate Judge Robbins shall contact the deputy clerk for the United States District Court and convey counsels [sic] request that the hearing as to venue in this matter should be expedited if possible.

The motion to dismiss this action in "Favor of the English Forum" shall be presented to the District Court.

*See* Minute Order, dated July 28, 1997.

On August 1, 1997, Wissel II filed a withdrawal of its *Ex Parte* Application. Wissel II and the Vessel filed the instant noticed Motion to Dismiss on August 20, 1997. Kelso and Union each filed opposing papers on September 15, 1997 ("Kelso Opposition" and "Union Opposition," respectively). On September 29, 1997, Defendants filed a reply ("Reply"). Kelso filed a "Sur–Reply," to which Defendants objected on October 27, 1997.[1]

## B. Factual Background

The Vessel is a Bahamian flag vessel and is owned and operated by Wissel II, a Cayman Island corporation. *See* Declaration of Ove Lundqvist ("Lundqvist Decl.") at ¶ 2, filed in support of Motion. Gustaf Erikson, a Finnish corporation, is the manager of the Vessel. *Id.* The Vessel was time-chartered to Lauritzen Reefers A/S ("Lauritzen") by Seatrade Group N.V. (with whom Wissel II had entered into a pooling agreement), pursuant to a Charter Party dated August 14, 1996 at Copenhagen. Declaration of Bror Jan–Henrik Ralfson Schauman ("Schauman Decl.") at ¶¶ 4–5, filed in support of Motion.

On July 8, 1997, at Guayaquil, Ecuador, the Master of the Vessel issued to Lauritzen's agents his written authorization to issue bills of lading on his behalf. Schauman Decl. at ¶ 6. On or about July 9, 1997, at Guayaquil,

Ecuador, approximately 110,000 boxes of bananas were received on board the Vessel from or on behalf of Plaintiffs. *Id.* at ¶ 7. Three bills of lading, Bills of Lading Nos. 1, 2 and 3, were issued evidencing the contract of carriage for the bananas. *Id.; see* Bills of Lading Nos. 1, 2 and 3, attached as Exhibits D–F to Schauman Decl. The three bills of lading provide that the bananas were to be carried on the Vessel from Guayaquil, Ecuador to Auckland, New Zealand. *See* Bills of Lading, attached as Exhibits D–F to Schauman Decl.

In route to New Zealand from Ecuador, the Vessel reported a loss of refrigerant. Declaration of Alan Nakazawa ("Nakazawa Decl.") at ¶ 2, filed in support of Motion. Plaintiffs contend that Defendants notified Plaintiffs that they were directing the Vessel to Chile or Los Angeles to sell the bananas. *See* Declaration of George W. Nowell ("Nowell Decl.") at ¶ 6, filed in support of Union's Opposition; Fax dated July 16, 1997 from Barlow, Lyde & Gilbert, Exhibit 17 attached to Declaration of John R. Keough ("Keough Decl.") filed in support of Kelso's Opposition. Plaintiffs also contend that they urged Defendants to return to Ecuador before the bananas decomposed and became too expensive to handle. Nowell Decl. at ¶ 6. Defendants, however, assert that the Los Angeles market appeared to be the closest accessible market that could take the cargo. *See* Declaration of Godfrey J. Curtis ("Curtis Decl.") at ¶ 2, filed in support of Motion. The Vessel berthed at Port Hueneme, California on July 25, 1997 at 0800. *Id.* at ¶ 3.

Plaintiffs allege that Defendants then "discharged the bananas onto the pier," and sought Plaintiffs' "acquiescence to disposal of the bananas as packaged … in a single California general land fill or dump." Nowell Decl. at ¶¶ 16–17. However, Plaintiffs assert that such disposal would be unlawful because the bananas were bagged in plastic containing a pesticide known as "Dursban," which is a regulated hazardous waste substance in California. Declaration of Christopher Penza at ¶ 4, filed in support of Union's

---

**1.** The Local Rules do not provide for the filing of a "Sur–Reply." Furthermore, Kelso did not ask leave of the Court to file its "Sur–Reply." The Court, therefore, will not consider the "Sur–Reply" in its ruling.

Opposition ("Penza Decl."). Defendants, however, contend that they were unaware that the cargo contained Dursban until the Vessel arrived at Port Hueneme where the cargo was tendered to the Plaintiffs. *See* Woolley Decl. at ¶¶ 3, 5; Lundqvist Decl. at ¶ 4. Plaintiffs declare that the Defendants were aware that the banana cargo contained the pesticide Dursban prior to berthing in Port Hueneme. Collier Decl. ¶ 3 (Kelso—late filed).

On August 7, 1997, the parties reached an agreement on the amount of security for the Vessel's release (which had been under arrest at Port Hueneme since its arrival). Nakazawa Decl. at ¶ 4. After Defendants posted security, Magistrate Judge Robbins released the Vessel, which set sail from Port Hueneme on August 7, 1997.

In its Complaint, Kelso alleges that Defendant was negligent, unreasonably deviated the Vessel from the intended port of discharge in New Zealand, and tortiously interfered with the bill of lading contracts of carriage. *See* Complaint. Kelso claims that its bananas were damaged as a result and estimates its damages to be $1,000,000. *Id.* Kelso is making a claim to approximately 60,000 boxes of the bananas, under Bills of Lading Nos. 1 and 2. In its Complaint in Intervention, Union makes similar allegations and claims $715,000 in damages to its bananas. *See* Complaint in Intervention. Union is named as the shipper on Bill of Lading No. 3 and makes its claim for approximately 50,000 boxes of bananas.

The reverse sides of Bills of Lading Nos. 1,2 and 3 all contain Clause 37, which provides:

> Jurisdiction. The contract evidenced by this Bill of Lading shall be governed by English law and any dispute hereunder shall be determined in England by the High Court of Justice in London according to English law and to the exclusion of the Courts of any other Country.

*See* Bills of Lading, attached as Exhibits D–F to Schauman Decl. Clause 37 is the subject of Defendants' Motion to Dismiss.

## II. Discussion

Defendants' Motion seeks an order from this Court dismissing Kelso's and Union's actions based on a forum selection clause, Clause 37, contained in each of the subject bills of lading.

### A. Standard

 The Ninth Circuit has held that a motion to dismiss premised on the enforcement of a forum selection clause should be treated as a Federal Rule of Civil Procedure 12(b)(3) motion. *See R.A. Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996) (reviewing conflicting case law and rejecting position that such a motion should be treated as a Fed.R.Civ.P. 12(b)(6) motion); *see also Offshore Sportswear, Inc. v. Vuarnet International, B.V.,* 114 F.3d 848, 850 (9th Cir.1997) (holding that "[w]e treat dismissal based on a forum selection clause like a dismissal for improper venue under Rule 12(b)(3).") In reaching this decision, the *R.A. Argueta* court noted that unlike a Rule 12(b)(6) analysis, "[a]nalysis under Rule 12(b)(3) ... permits the district court to consider facts outside the pleadings and is consistent with the Supreme Court standard for resolving forum selection clause cases." *Id.* (citing *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270; *M/S Breman v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). Accordingly, in reviewing a motion to dismiss based on the enforcement of a forum selection clause, the court does not need to accept the pleadings as true, and the court is permitted to consider facts outside of the pleadings. *Id.*

 Interpretation and enforcement of contractual forum selections clauses are procedural issues to be decided under federal law. *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir.1988). Under federal law, a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. *See M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). As recently announced by the Ninth Circuit:

The enforceability of forum selection clauses in international agreements is controlled by the Supreme Court's decision in M/S *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *Bremen,* the Court first held that forum selection clauses are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is " 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. 1907. The Supreme Court has construed this exception narrowly. A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, *Carnival Cruise Lines,* 499 U.S. at 591, 111 S.Ct. 1522; *Bremen,* 407 U.S at 12–13, 92 S.Ct. 1907; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," *Bremen,* 407 U.S. at 18, 92 S.Ct. 1907; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Id.* at 15, 92 S.Ct. 1907. To establish the unreasonableness of a forum selection clause, [the non-moving party has] the "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 281 (9th Cir.1984) (citing *Bremen,* 407 U.S. at 18, 92 S.Ct. 1907). *R.A. Argueta,* 87 F.3d at 325.

Although *Bremen,* the pivotal case, is an admiralty case, its standard has been widely applied to forum selection clauses generally. *See generally R.A. Argueta,* 87 F.3d 320 (applying *Bremen* to affirm enforcement of a forum selection clause in loan agreements); *Spradlin v. Lear Siegler Management Servs. Co.,* 926 F.2d 865, 867 (9th Cir.1991) (applying *Bremen* to affirm enforcement of a forum selection clause in an employment contract); *Manetti–Farrow,* 858 F.2d at 512 (applying

*Bremen* to affirm enforcement of a forum selection clause in an exclusive dealership contract); *Pelleport,* 741 F.2d at 280 (applying *Bremen* to affirm enforcement of forum selection clause in a domestic contract involving the exhibition of motion pictures).

## B. Analysis

Kelso contends that the Court should not dismiss the action because (1) Defendants waived their venue objection by withdrawing their *Ex Parte* Application and are barred from bringing the instant motion under Fed. R.Civ.P. 12(h); (2) the forum and choice of law clause, Clause 37, is invalid and unenforceable; (3) the Vessel's unreasonable deviation to California voids the contract of carriage and deprives the Defendants of the protection of Clause 37; and (4) the Bills of Lading, which contain Clause 37, do not apply to Kelso's action because Wissel II is not a party to charterer Lauritzen's Bills of Lading and Kelso alleges maritime torts that fall outside of the forum selection clause. Union asserts essentially the same arguments as Kelso to support its opposition to Defendants' motion to dismiss. The Court will address each of Plaintiffs' arguments in turn.

### 1. Defendants' Filing of Instant Motion to Dismiss Under Fed.R.Civ.P. 12(b)(3).

█ Kelso argues that Defendants have waived their venue objection by withdrawing their *Ex Parte* Application and cannot bring the instant motion to dismiss because Fed. R.Civ.P. 12(h) prohibits "such multiple motions to dismiss." Kelso Opp. at 16:4–10. The Court, however, does not find that Defendants waived their venue objection, or that Defendants' instant motion is barred by Rule 12(h). Defendants' instant motion asserts the identical "defense of objection" as their *Ex Parte* Application, that Plaintiffs' actions should be dismissed based on the forum selection clause in the bills of lading. Thus, Defendants' instant motion does not fall within the ambit of Rule 12(g)'s and Rule 12(h)'s bar to raising defenses or objections omitted in prior motions.[2]

---

**2.** Rule 12(g) provides that "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available ... the party shall not thereafter make a motion based on the

defense or objection so omitted ...." Fed. R.Civ.P. 12(g). Defendants did not "omit" their venue objection, but included it in their prior *Ex Parte* Application. Rule 12(h)(1) provides that "a

Furthermore, the Court finds that Defendants' withdrawal of their *Ex Parte* Application and filing of the instant *noticed* Motion was proper. If Defendants had not withdrawn their *Ex Parte* Application, the Court would have denied Defendants' *Ex Parte* Application and required Defendants to file a noticed motion for dismissal, which Defendants now have done. Thus, because Defendants' instant motion does not relate to "new" defenses or objections and Defendants properly withdrew their *Ex Parte* Application, the Court finds that Defendants have not waived their venue objections.

### 2. Enforceability of Forum Selection Clause

█ Plaintiffs contend that the English forum selection clause is unreasonable under *Bremen,* and therefore unenforceable, because enforcement of Clause 37 would violate statutory law and strong public policy of California and the United States. Kelso Opp. at 16:23–17:1–8. Specifically, Kelso and Union argue that the clause violates the U.S. Carriage of Goods by Sea Act, 46 U.S.C. § 1303(8) ("COGSA"); the Harter Act, 46 U.S.C. § 190 *et seq.;* and the U.S. Limitation of Liability Act, 46 U.S.C. § 183 *et seq.* because English limitation of liability law will limit the total recovery by Kelso and Union to $1.3 million. Kelso Opp. at 17:5–21; Union Opp. at 14:18–23. The Plaintiffs also contend that enforcement of the English forum clause violates strong public policy of the United States disfavoring limitations of liability, which encourage negligence. Kelso Opp. at 22:7–23:10; Union Opp. at 15:13–23.

#### a. *Applicability of COGSA*

The provisions of COGSA apply to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade ...." 46 U.S.C. § 1300. Plaintiffs contend that COG-SA applies to the bills in lading in question because the Defendants discharged cargo from a foreign port at a United States port. Kelso Opp. at 17:28–18:9; Union Opp. at 13:3–17. Defendants, on the other hand, argue that COGSA does not apply *ex proprio vigore* because the bills of lading indicate a contract to carry cargo between two foreign ports, Ecuador and New Zealand. Reply at 6:18–7:5. Additionally, Defendants assert that the bills of lading do not incorporate COGSA, but rather the Hague/Visby rules, as part of the carriage contract. *Id.* at 7:28–8:6.

It appears to the Court that COGSA does not apply to the subject bills of lading by virtue of the plain language of the statute. COGSA covers bills of lading which are "*evidence of a contract*" for the shipment of goods between a foreign port and the United States. 46 U.S.C. § 1300. In the instant action the contract was for the shipment of goods between two foreign ports. Furthermore, the Court does not find persuasive Union's argument that Defendants "voluntarily submitted to the application of U.S. COGSA" by virtue of unloading their cargo at Port Hueneme. Union's Opp. 13:6–10. First, Union provides no authority to support its assertion. Second, the Ninth Circuit has held that in a contract for carriage of goods between two foreign ports, the discharge of damaged cargo at a port of the United States "is insufficient to invoke COGSA ex proprio vigore unless the bill of lading provides a contractual basis for this contingency."[3] *In the Matter of the Complaint of Damodar Bulk Carriers, Ltd.,* 903 F.2d 675, 680 (9th Cir.1990). Additionally, Plaintiffs have not provided any evidence that COGSA should be applied as a contractual term to the bill of lading.

█ However, because the Court finds below that the forum selection clause is enforceable, whether COGSA applies should be determined by the English court. If COGSA

---

defense of ... improper venue ... is waived ... if omitted from a motion ...." Again, Defendants' *Ex Parte* Application contained their defense of "improper venue" by asserting that the forum selection clause applied to Plaintiffs' actions.

**3.** In *Damodar* a fire occurred aboard the vessel, allegedly from defendants' failure to load the cargo properly and the lack of a proper fire extinguishing system on board, requiring the master to set a course for Honolulu as a refuge port. *Matter of Complaint of Damodar,* 903 F.2d at 677. While Defendants in the instant action did not seek Port Hueneme as a port of refuge due to danger to the vessel, Defendants did berth at Port Hueneme to attempt to salvage their cargo.

applies, an English court can apply the law of COGSA to Plaintiffs' action as well as this Court. The Supreme Court has held that "skepticism over the ability of foreign [courts] to apply COGSA or the Hague Rules ... must give way to contemporary principles of international comity and commercial practice." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 537, 115 S.Ct. 2322, 2328, 132 L.Ed.2d 462 (1995).

### b. *Enforceability of English Forum Clause under Bremen*

Plaintiffs contend that the English forum clause is unenforceable because it violates COGSA's prohibition against limiting carrier's liability. Even if English law is applied and Plaintiffs' total recovery is limited to $1.3 million, the Court does not find that this violates public policy, rendering the forum selection clause unreasonable. *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916 (stating that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought"). First, England has adopted the Hague–Visby rules, which are similar to COGSA. Although the British version of COGSA may include monetary limitations on a carrier's liability in excess of the COGSA limitations, these limitation do not leave Plaintiffs without a statutory remedy.[4] Nevertheless, if COGSA applies, the English forum can apply COGSA's limitation requirements. Second, Plaintiffs will not be

denied their day in court because they have a remedy in English courts, which apply admiralty law similar to that applied in courts of the United States.[5]

Furthermore, Plaintiffs' argument that enforcement of the forum clause would be unreasonable is especially thin considering the Ninth Circuit's recent holding in *Fireman's Fund Ins. Co. v. Cho Yang Shipping Co.*, 131 F.3d 1336 (9th Cir.1997). In *Fireman's Fund*, the Court enforced a forum selection clause, although the chosen forum deprived the Plaintiff of its right to proceed *in rem* against the vessel.[6] The Court held that "the loss of that right is insufficient to invalidate the forum clause on public policy grounds." *Id.* at 1338. England, however, provides *in rem* proceedings. In addition, the Court explained that the substantive obligations that may not be limited by a carrier under COGSA, include its "guarantees that the carrier will: exercise due diligence to ... [m]ake the ship seaworthy; [p]roperly man, equip and supply the ship; [m]ake the ... parts of the ship in which goods are carried ... fit and safe; properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried; and issue to the shipper a bill of lading with specified contents." *Id.* at 1339 (quoting 46 U.S.C.App. § 1303(1)-(3)) (internal quotations omitted). Plaintiffs have not presented any evidence that the Hague–Visby rules as applied in England will limit Defendants' liability as to any of the above.[7] Thus, the Court finds

---

**4.** Plaintiffs will either have a statutory remedy under the British version of COGSA or under COGSA. Furthermore, both the British version of COGSA and COGSA "reflect[ ] a compromise between cargo interests and carriers—a compromise of rights and liabilities" including limitation provisions. *Id.* Thus, even if COGSA applies, monetary limitations on Plaintiffs' recovery could exist. *Jones v. The Flying Clipper*, 116 F.Supp. 386, 388 (S.D.N.Y.1953). Finally, if Defendants unreasonably deviated from the contracted course, then Defendants will not be able to invoke such monetary limitations, under British or American admiralty law. *Id.* at 390–91.

**5.** In fact, both the British Carriage of Goods by Sea Act and COGSA are based on the Hague Rules. *See Jones*, 116 F.Supp. at 388.

**6.** Not only did the chosen forum, Korea, not provide for *in rem* proceedings against a vessel, but Korea is not a signatory to the international equivalent of COGSA. *International Marine Un-*

*derwriters CU a/s/o Hyundai Corp. v. M/V KASIF KALKAVAN*, 989 F.Supp. 498, 499 n. 1 (S.D.N.Y. 1998) (upholding Korean forum selection clause in bill of lading for shipment of goods from Korea to Georgia as to plaintiff's in personam action because "the liability of these defendants would not be lessened by requiring plaintiff to bring suit in a Korean forum").

**7.** In fact, even under *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir.1967) which was decided prior to *Bremen* and *Sky Reefer*, foreign courts that applied the Hague Rules were not considered to "lessen liability." *Id.* at 203–204 (holding that "making a claim triable only in a foreign court could almost certainly lessen liability if the law which the court would apply was *neither the Carriage of Goods by Sea Act nor the Hague Rules* ") (emphasis added). *See also Tradearbed Inc. v. M/V Agia Sofia*, 1997 WL 769525 at *5 (D.N.J.) (enforcing Korean forum selection clause because Korean law provided similar pro-

that litigation in England would not lessen Defendants' liability within the meaning of COGSA.[8]

Additionally, Plaintiffs argue that enforcement of Clause 37 violates public policy based on the United States' and California's interest in enforcing their environmental laws. The Court finds, however, that this argument is also without merit. First, there is no evidence that California or the United States have brought any actions against any parties under environmental laws. Second, Plaintiffs do not assert any cause of action against Defendants based on statutory remedies provided in CERCLA or the California equivalent. Therefore, the Court finds that Plaintiffs have not established that enforcement of the forum clause will violate public policy relating to the enforcement of environmental laws.

Based on the foregoing, the Court finds that Plaintiffs have not met their heavy burden under *Bremen* to establish that the forum clause is unreasonable. While acts occurred in the United States, the Plaintiffs have failed to show that the United States has an *overriding* interest in hearing the case. Because the parties are from different nations and the cargo was contracted to be delivered between two foreign ports, Plaintiffs could not have expected to be able to litigate in the United States.[9] England is not only a neutral forum,[10] but it is the forum where the parties *anticipated* that any disputes would be heard. Therefore, based on Plaintiffs' failure to show that the English forum clause violates public policy,[11] the Court finds that the forum selection clause should be enforced.

### 3. Unreasonable Deviation

■ Even if the forum clause is enforceable, Plaintiffs contend that it does not apply because Defendants' "deviation from the contract voyage vitiates the contract of carriage, and deprives the carrier of the protection and benefits of the contract." Kelso Opp. at 25:9–11. Under both American and English admiralty law, an unreasonable deviation from a bill of lading does deprive the carrier from relying on the terms of the bill of lading. *North River Ins. Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 989 (9th Cir.1981); *Jones v. The Flying Clipper*, 116 F.Supp. 386, 390–91 (S.D.N.Y.1953). Thus, liability limitations imposed under both COGSA and the English equivalent do not apply to carriers who have committed an unreasonable deviation. *Nemeth v. General Steamship Corp.*, 694 F.2d 609, 612–13 (9th Cir.1982); *Flying Clipper*, 116 F.Supp. at 391. Plaintiffs, therefore, argue that Defendants cannot rely on the English forum clause because they unreasonably deviated from the bill of lading by traveling to Port Hueneme.

■ It is unclear whether Defendants' transporting of Plaintiffs' cargo to Port Hueneme was unreasonable. Nevertheless, even if Defendants did commit an unreasonable deviation depriving Defendants of the protections set forth in the bills of lading, whether Defendants did commit such an unreasonable deviation should be determined by the law designated in the bill of lading. *North River*, 647 F.2d. at 990 (explaining that "[n]o court has held that the allegation of deviation deprives the holder of the bill of lading of the coverage of governing law within it, and holding that forum selected 'retain[ed] jurisdiction to determine according to that law if a deviation has occurred' "). Furthermore, Plaintiffs will not be prejudiced if the English forum determines whether a deviation has occurred because American law relating to deviation stems from the

---

tection as COGSA and the *Hague Rules* ) (emphasis added).

8. The above discussion assumes that COGSA applies. Of course, if COGSA does not apply, Plaintiffs' argument regarding limitations of liability under COGSA is moot.

9. For example, if Defendants had decided to berth in Chile, Plaintiffs would have no basis to assert that the action should be litigated in the United States.

10. In fact in *Bremen*, the Supreme Court noted that "the courts of England meet the standards of neutrality and long experience in admiralty litigation." *Bremen*, 407 U.S. at 12, 92 S.Ct. at 1914.

11. Plaintiffs do not argue that the forum selection clause is invalid due to fraud or overreaching.

same principles as English law. *Nemeth,* 694 F.2d at 612–13. Thus, because Clause 37 is enforceable, the English forum should determine whether Defendants committed an unreasonable deviation.

### 4. Wissel II as Party to the Bills of Lading

Plaintiffs also argue that the forum selection clause does not apply to Defendant Wissel II, because it is not a party to the bills of lading. Kelso Mot. at 31:4–5. Plaintiffs contend that the Master was acting as the agent of the time charterer, Lauritzen, rather than on behalf of the vessel owner, Wissel II. The cases Plaintiffs rely on to support their contention that Wissel II is not a party to the bills of lading, however, involve situations where the plaintiff attempted to bind the owner to the terms of the bills of lading. For instance in *Yeramex Int'l v. S.S. Tendo,* 595 F.2d 943 (4th Cir.1979), the vessels' time charterer issued a bill of lading without noting the damaged condition of cargo it was to transport for plaintiff. Because the time charterer was bankrupt, plaintiff attempted to bring an action against the vessels' owner. *Id.* at 944. The sole issue decided by the court was whether the owner could be held liable "for the misdeeds of the vessels' time charterer by virtue of the authority of their captains or masters to sign bills of lading" under a time charter agreement which provided that "the owner is responsible for navigation and seaworthiness of the vessels; the charterer is responsible for all matters relating to cargo other than . . . matters affecting the vessels' seaworthiness." *Id.* at 944, 947–48. Under these facts, the court found that no liability *in personam* could lie against the owner for the charterer's bill of lading. *Id.* at 948.

The facts of the instant case, however, are distinguishable from *Yeramex.*[12] First, the current action does not involve a situation where the plaintiff is attempting to bind the owner to a bill of lading. In fact, Plaintiffs argue the opposite. Second, as the Defen-

dants note, the bill of lading at issue in *Yeramex* included a clause that provided that only the charterer would be liable as Carrier under that bill of lading, which is not present here. *Armco Chile Prodein v. M/V Norlandia,* 880 F.Supp. 781, 790 (M.D.Fla.1995), *aff'd,* 104 F.3d 370 (11th Cir.1996); Reply at 31:18–22 & n.28. Furthermore, other courts have held that vessel owners are parties to bills of lading despite the fact that the owners "did not sign or negotiate the bills of lading." *Farrell Lines Inc. v. Columbus Cello–Poly Corp.,* 1997 WL 570494 at *6 (S.D.N.Y.) (citing *Bison Pulp & Paper Ltd. v. M/V Pergamos,* 1995 WL 880775 at *14 (S.D.N.Y.)).

 Finally, as the Court has determined that the forum selection clause is enforceable, the English forum should determine whether Wissel II is bound by the bills of lading. Under English law, according to Defendants, Clause 7 of the Pool Trade Agreement which provides that "[t]he Master, although appointed by the Member [Vessel Owner], shall be under the orders and directions of Seatrade as regards employment and agency," has the effect of binding the shipowner to a bill of lading signed by the Master. *See* Chumas Decl. at ¶ 3(A)-(C) (citing *The Berkshire,* 1 Lloyd's Rep 185, 188 (1974)). Therefore, because the Master issued his written authorization to Lauritzen's agents to issue bills of lading on his behalf, under English law, Wissel II is considered a party to those bills of lading. Accordingly, the Court finds, for purposes of the instant motion, that Clause 37 applies to Wissel II.

### 5. Plaintiffs' Tort Claims Governed by English Forum Clause

 Additionally, Plaintiffs argue that their tort claims,[13] negligence (damage to cargo), negligence (deviation), and tortious interference with contractual relations, do not relate to the interpretation of the alleged contract, and thus are not covered by the forum selection clause. Kelso Mot. at 34:1–

---

12. Plaintiffs also rely on *Demsey & Assoc. v. S.S. Sea Star,* 461 F.2d 1009, 1015 (2nd Cir.1972) which is similar to *Yeramex* in that the court held that the owner could not be found liable *in personam* because the owner did not authorize the charterer's agent to issue the bills of lading.

13. Union's tort claims are similar to Kelso's: negligence and intentional acts. In addition, Union alleges breach of contract.

24. To the contrary, the Court finds that Plaintiffs' claims directly relate to the bills of lading because Plaintiffs' tort claims stem from the delivery of the bananas, which was the purpose of the contract. Defendants' liability for its alleged deviation and subsequent conduct with regard to Plaintiffs' cargo necessarily relates to the interpretation of rights and duties set forth in the bills of lading and related contracts that govern the agreement between Plaintiffs and Defendants for the stowage and delivery of the bananas. *See Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir. 1988) (noting that "forum selection clauses can be equally applicable to contractual and tort causes of action," and finding that plaintiff's tort claims were within the scope of the forum clause because they related "in some way to rights and duties enumerated in the ... contract").[14]

Furthermore, the Court finds *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840 (2nd Cir.1987), relied upon by Kelso to support its contention that its claim for tortious interference with contractual relations is outside the scope of the English forum clause, to be distinguishable. First, *Genesco* relates to the application of an arbitration clause to plaintiff's tort claims. *Id.* at 845. Second, the court *did* apply the arbitration clause to many of plaintiff's tort claims because those claims arose from transactions relating to the contract at issue. The court found that plaintiff's claim for tortious interference with contractual relations was not covered by the arbitration agreement because defendants' alleged interference with plaintiff's employment contract with one of its employees did not relate to the sales contract (containing the arbitration clause) between plaintiff and defendants. *Id.* at 856.

The instant action, however, involves a forum selection clause, rather than an arbitration clause. More importantly, as explained above, Kelso's tort causes of action allege facts directly related to the agreements (the bills of lading) between Plaintiffs and Defen-

dants regarding the transportation of cargo. For instance, Kelso's claim for tortious interference of contractual relations relates to Kelso's contracts regarding the delivery of the bananas, which delivery is the subject of the bills of lading. Therefore, the Court finds that Kelso's tort claims are within the scope of the English forum clause.

### III. Conclusion

For all of the reasons set forth above, the Court hereby ORDERS that Defendants' motion to dismiss pursuant to the English forum selection clause in the bills of lading is GRANTED.

SO ORDERED.

---

**14.** In addition, in *Bremen,* the Supreme Court did not distinguish between Plaintiff's negligence and contract claims in enforcing the forum selection clause. *See also Bison Pulp & Paper, Ltd. v. M/V PERGAMOS* 1995 WL 880775 at *15 (1995) (finding that similarly worded forum selection clause applied to plaintiffs' negligence and bailment claims and explaining that "courts have consistently assumed that comparably worded forum clauses cover all claims for lost or damaged cargo").