**ROBERTS & SCHAEFER COMPANY, a Delaware Corporation, Plaintiff–Appellant,**

v.

**MERIT CONTRACTING, INCORPORATED, a Pennsylvania Corporation, Defendant–Appellee.**

No. 95–3573.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1996.

Decided Oct. 30, 1996.

Rehearing Denied Nov. 21, 1996.

Robert J. Franco, II, Linda Urbanik Johnson (argued), Bollinger, Ruberry & Garvey, Chicago, IL, for Plaintiff–Appellant.

Stephen R. Swofford, Lawrence L. Moelmann (argued), Hinshaw & Culbertson, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and CUMMINGS and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellant Roberts & Schaefer Company ("R & S") sued defendant-appellee Merit Contracting, Inc. ("Merit") in the Circuit Court of Cook County, Illinois, claiming that Merit had breached its construction subcontract with R & S. Merit removed the case to federal district court on the basis of diversity of citizenship. 28 U.S.C. §§ 1332, 1441. Merit then filed a motion to dismiss or, in the alternative, to transfer the case to the United States District Court for the Western District of Pennsylvania or stay the proceedings pending resolution of a case between the parties in Pennsylvania state court. R & S responded with a motion to remand to state court, arguing that its contract with Merit contained a forum selection clause according to which the parties agreed that (1) Illinois law would govern any contractual dispute between them, and (2) the Illinois Circuit Courts would have exclusive jurisdiction to adjudicate any such dispute. The district court rejected Merit's contention that the parties' agreement contained the forum selection clause and entered an order dismissing R & S's suit for lack of personal jurisdiction. R & S appeals. We reverse and remand.

## I. BACKGROUND

R & S, a Delaware corporation with its principal place of business in Chicago, Illinois, is a design/build contractor. Merit, a Pennsylvania corporation with its principal place of business in Monongahela, Pennsylvania, engages in general construction work. R & S bid on and was awarded the contract to design and build a raw coal storage and handling facility in Washington County, Pennsylvania, for the 84 Mining Company. R & S subcontracted with Merit to perform

demolition, excavation, and construction work in connection with this project, described as the "84 Mining Project".

The subcontract between R & S and Merit came about as follows. On May 25, 1993, R & S asked Merit to submit a bid to perform the previously mentioned construction services on the 84 Mining Project. To assist Merit in making its bid, R & S passed along to Merit a "bid package" prepared by 84 Mining Company. Although the bid package was never submitted to the district court, we understand from Merit's attorney's representations at oral argument that this bid package contained details of the demolition and construction work that Merit proposed to perform. Based on the bid package, Merit submitted a bid of $1.775 million, and, on August 27, 1993, R & S accepted the bid verbally. R & S told Merit to proceed with the work, and Merit commenced work on September 1, 1993.

On September 7, 1993, R & S sent a letter to Merit confirming their Purchase Order No. 9331–711 for the demolition and construction work to be performed by Merit on the 84 Mining Project. The letter briefly described the nature of the work (demolition, excavation etc.) and listed a price of $1.775 million. The letter further stated that the confirming purchase order documents would be forwarded to Merit as soon as they were complete. At the end of September, Merit invoiced R & S for work done during that month in the amount of $154,620.00, and, in late October, R & S paid the invoice by check.

On November 1, 1993, R & S sent Merit Purchase Order No. 9331–711 and several accompanying documents (collectively, the "Purchase Order Documents"). The purchase order consisted of seven pages. The first page provided a brief description of the work, while the remaining pages provided a more detailed breakdown of the work to be performed, the work completion schedule, the contract price and payment terms.[1] Accompanying Purchase Order No. 9331–711 was a document titled "Roberts and Schaefer

Company Construction General Notes and Conditions" ("General Notes and Conditions"). The General Notes and Conditions contained terms relating to a wide variety of issues, including scheduling, payments, risk of loss, inspections, changes, warranties, force majeure (e.g., Acts of God), indemnification and insurance, and liens. The General Notes and Conditions also included Paragraph 6.14 titled "Law Governing." This provision stated:

> This purchase order and all disputes between the parties hereto shall be governed by and construed according to the laws of Illinois whose Circuit Courts shall have exclusive jurisdiction to determine all such issues.

In addition to the General Notes and Conditions, the purchase order was accompanied by a document entitled "Sub–Contract Agreement." The Sub–Contract Agreement identified the work to be done by Merit on the 84 Mining Project as that "specified" by Purchase Order No. 9331711; it also identified the price as $1.775 million. A representative of R & S signed the Sub–Contract Agreement, but no representative of Merit ever signed the document.

On November 11, 1993, R & S sent Merit revised pages 2, 5, and 6 of the purchase order. According to the cover letter, these pages were revised to reflect certain points regarding concrete volume and liquidated damages discussed on November 4, 1993.

As work progressed on the 84 Mine Project, Merit notified R & S on several occasions that its work was being delayed for various reasons and thus it could not fulfill the completion date. For example, in a letter dated February 4, 1994, Merit notified R & S that "[b]ecause of the continued fabrication mistakes and late deliveries, the coal run date of March 18, 1994, the finish date of April 1994 and the final completion on April 30, 1994 are in severe jeopardy. Any further delays will make it impossible to meet this schedule."

---

**1.** The purchase order does not specify a dollar figure for the price of the subcontract; instead, it identifies the price merely by referring generally to the phone quote given to R & S by Merit's president on August 27, 1993.

Prior to their collaboration on the 84 Mine Project, R & S and Merit had worked jointly on another construction project, the Emerald Mine Project. For that project, Merit signed a Sub–Contract Agreement dated October 22, 1992, which incorporated the identical General Notes and Conditions, including the forum selection clause.

On December 28, 1994, R & S filed suit against Merit in the Circuit Court of Cook County, alleging that it and Merit entered into a contract defined by the terms of the Purchase Order Documents. R & S further alleged that, during the course of Merit's work on the 84 Mining Project, disputes arose between the parties stemming from delays in the construction and increased costs on the Project. According to R & S, Merit (1) failed to meet certain completion dates as specified in the purchase order, (2) incurred additional costs in excess of those provided for in the contract, (3) failed to submit waivers of lien to R & S, as provided within the terms of the contract as a condition for payment, and (4) contacted the owner stating its intention to file a lien against the owner and the property for work it claims to have performed and not been paid for.

Merit removed the case to federal court pursuant to 28 U.S.C. § 1441. Thereafter, Merit filed a motion seeking the dismissal of the suit for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). According to Merit, it did not have the requisite "minimum contacts" with Illinois to subject it to the jurisdiction of the Illinois state courts (or a federal court in Illinois sitting in diversity).

R & S responded with a motion to remand the case back to the Circuit Court of Cook County. R & S argued that the forum selection clause contained in the General Notes and Conditions vested exclusive jurisdiction in the Illinois state Circuit Courts. To establish the validity of the forum selection clause, R & S submitted to the district court a Schedule of Exhibits, which included Purchase Order No. 9331–711, the General Notes and Conditions, and the SubContract Agreement. Also included in the Schedule of Exhibits was much of the correspondence between Merit and R & S, as well as the

previously referred to agreement between the parties concerning the Emerald Mine Project.

The district court issued a Memorandum Opinion and Order resolving these motions. The court first considered whether the action was properly removed from state court. In reaching the conclusion that the action was properly removed from state court, the court determined that whether the forum selection clause was part of the parties' agreement was the central issue. The court found the parties entered in a contract when R & S accepted Merit's bid to perform the work. The court further found that Merit's continued performance of the work after receiving the Purchase Order Documents in November did not constitute an acceptance of the terms of the Purchase Order Documents because Merit's continued performance was entirely consistent with the agreement formed upon R & S's acceptance of Merit's bid. Therefore, the court reasoned, the forum selection clause never became part of the parties' agreement and hence remand to the Cook County Circuit Court based on the forum selection clause was not warranted. The judge then considered Merit's motion to dismiss for lack of personal jurisdiction. The court concluded that Merit lacked sufficient minimum contacts with Illinois to justify haling Merit into the Illinois state court system under the state's long-arm statute. Accordingly, the district judge granted Merit's motion to dismiss for lack of personal jurisdiction. R & S filed a timely notice of appeal.

## II. ANALYSIS

R & S claims that the district court erred in denying R & S's motion to remand to the Cook County Circuit Court and in granting Merit's motion to dismiss for lack of personal jurisdiction. In this suit based on diversity of citizenship, the parties agree that the law of Illinois governs the issue of the validity of the forum selection clause. To be precise, R & S explicitly states that Illinois law governs the validity of the clause, while Merit appears to assume that Illinois law governs. Hence, we look to Illinois law to determine the validity of the forum selection clause. *Cf. Northwestern Nat'l Ins. Co. v. Donovan*, 916

F.2d 372, 374 (7th Cir.1990) (deciding validity of forum selection clause under federal common law, where parties conceded to court the applicability of federal common law, because "litigants are, within limits not exceeded here, permitted to designate what law shall control their case").

▋ Under Illinois law, a forum selection clause is enforceable except in exceptional circumstances. *See Calanca v. D & S Mfg. Co.,* 157 Ill.App.3d 85, 109 Ill.Dec. 400, 402, 510 N.E.2d 21, 23 (1987). Enforcing a forum selection clause in a contract is a permissible basis for remand. *See Rothner v. City of Chicago,* 879 F.2d 1402, 1416 (7th Cir.1989). Of course, the primary question here is whether the forum selection clause in the General Notes and Conditions was ever a part of the parties' contract.

▋ Arguing that the forum selection clause was part of the agreement between R & S and Merit, R & S points to the Purchase Order Documents that it sent to Merit. Included in these documents were the General Notes and Conditions, which in turn contained the forum selection clause. Merit's signature does not appear on any of these documents. However, R & S points out that an offeree may manifest acceptance of an offer by performing under the contract. *Landmark Properties, Inc. v. Architects International–Chicago,* 172 Ill.App.3d 379, 122 Ill.Dec. 344, 347, 526 N.E.2d 603, 606 (1988); *Amelco Elec. Co. v. Arcole Midwest Corp.,* 40 Ill.App.3d 118, 351 N.E.2d 349, 354 (1976). Here, the parties seem to agree that Merit performed work under the contract (though they do dispute whether Merit performed according to their agreement).

Merit contends, however, that its continued performance did not constitute an acceptance of the terms of the unsigned Purchase Order Documents because it was performing the work pursuant to the parties' oral agreement reached on August 27 (when R & S accepted Merit's bid over the telephone) and not pursuant to the unsigned Purchase Order Documents. According to Merit, in order for an offeree's course of conduct to operate as consent to an unsigned contract tendered after performance has begun pursuant to an earlier oral contract, it must be clear that the offeree's conduct relates to the subsequent written contract rather than the initial oral contract. *Lundin v. Egyptian Constr. Co.,* 29 Ill.App.3d 1060, 331 N.E.2d 208, 211 (1975). If the offeree's conduct is entirely consistent with the initial contract, then the subsequently tendered contract does not control.

In the present case, Merit's conduct demonstrates that it performed according to the terms embodied in the subsequent contract (i.e., the Purchase Order Documents). For example, Merit took steps to notify R & S in writing several times of delays in construction that might jeopardize the proposed completion schedule. Merit's notifications were consistent with its acceptance of the Purchase Order Documents, which contained a construction schedule. These notifications, however, could not have been made pursuant to the terms of the bid package because the bid package—as we understand it based on Merit's representations to us—contained no timetable for completion of the work.

R & S identifies another example where Merit's continued performance related to the Purchase Order Documents. The record includes correspondence between Merit and R & S concerning a change in Merit's construction crews' work schedule. In this correspondence, Merit and R & S negotiated the amount of any delay penalty that might result from the new work schedule. Merit's president, Clement Gigliotti, initially proposed that Merit would be liable for only 8 percent of what he referred to as Merit's "contractual penalty." Later, Gigliotti faxed R & S and "signed off on the 16 percent" figure wanted by R & S. Then, for reasons which are unclear, the parties agreed to another (2nd) penalty provision. Ultimately, Merit and R & S signed a two-page agreement dated January 27, 1994, covering the new labor schedule, which contained the following "DELAY" clause:

> Merit is not responsible for the untimely completion of the project. Consequently Merit will NOT share in Merit's contractual penalty, if in fact there is an untimely completion, and that 84 Mining Co. holds R

& S responsible for a delay by invoking the penalty payment in full under the contract.

The course of the negotiations concerning this change in the crews' work schedule clearly demonstrates that Merit knew of the language of the "DELAY" clause. Merit's acknowledgement of a "contractual" delay penalty in that clause is inconsistent with its position that the bid package constituted the entire agreement between the parties because, as far as we know, the bid package contained no penalty provision. Accordingly, R & S has produced evidence sufficient to convince us that Merit's performance operated as an acceptance of the offer contained in the Purchase Order Documents.

Having concluded that R & S has produced evidence of an offer and an acceptance, we turn to the issue of consideration. The various documents cited by R & S provide for consideration in the amount of $1.775 million. In addition, Merit invoiced R & S and was paid for at least part of the work it performed. Thus, R & S has produced evidence that the contract provided for consideration and that R & S made partial payment under the contract. Together with the evidence of an offer and an acceptance, R & S has provided prima facie evidence of a contract. *Scutt v. LaSalle County Board,* 97 Ill.App.3d 181, 53 Ill.Dec. 21, 25, 423 N.E.2d 213, 217 (1981).

■ Once the plaintiff produces evidence establishing a prima facie case that a contract exists, Illinois law shifts the burden of production to the defendant to offer any evidence to the contrary. *Ambrose v. Thornton Township School Trustees,* 274 Ill.App.3d 676, 211 Ill.Dec. 83, 88, 654 N.E.2d 545, 550 (1995); *Anderson v. Department of Public Property,* 140 Ill.App.3d 772, 95 Ill.Dec. 60, 64, 489 N.E.2d 12, 16 (1986).[2] Merit points to Gigliotti's affidavit, which states that "[n]o one from Merit signed [the Purchase Order Documents] because the terms were unacceptable and did not represent the parties' agreement." We find this self-serving asser-

tion incredible in light of the surrounding facts of this case. As discussed previously, certain aspects of Merit's conduct during the course of its performance suggest that Merit believed that the terms of the Purchase Order Documents represented the parties' agreement. R & S's letter of November 11, 1993, demonstrates that the parties negotiated certain terms contained in the purchase order. If, as Merit now claims, the bid package came to embody all the terms of the subcontract when Merit's bid was accepted verbally on August 27, then why was Merit negotiating with R & S over the terms of the purchase order in November? In addition, why did Merit acknowledge in January 1994 that it was subject to a "contractual" delay penalty when only the Purchase Order Documents contained such a provision? As for the claim in Gigliotti's affidavit that the terms of the Purchase Order Documents were unacceptable, Merit has failed to present any evidence that it had any concerns or expressed any objection to R & S regarding the forum selection clause or any other provision contained in the General Notes and Conditions. Perhaps most damaging to Merit's claim that the General Notes and Conditions were unacceptable to it is that, for the Emerald Mine Project, Merit agreed to *exactly the same General Notes and Conditions.* As the record stands, if the Purchase Order Documents, including the General Notes and Conditions, do not constitute the terms of the subcontract between Merit and R & S, then we are at a loss to understand what does.

As we have noted, Merit's theory is that the terms contained in the bid package, along with Merit's bid of $1.775 million, together constitute the terms of the subcontract. As previously discussed, Merit's continued performance appears to be consistent with the terms of the Purchase Order Documents rather than the bid package. We see two additional problems with Merit's theory. First, the bid package was not included in the record presented to this court. Thus, we have no way of determining whether the bid

**2.** Although in diversity cases federal law governs matters of procedure, *see Smith v. Equitable Life Assurance Society,* 67 F.3d 611, 615 (7th Cir. 1995), state law governs questions regarding which party bears the burden of proof on a

particular issue, *see Sundstrand Corp. v. Standard Kollsman Indus.,* 488 F.2d 807, 813 (7th Cir. 1973); *Erving Paper Mills v. Hudson–Sharp Mach. Co.,* 332 F.2d 674, 677 (7th Cir.1964).

package contains the type of terms that could possibly constitute a valid and enforceable contract. Merit attempts to lay the blame for this situation on R & S, arguing that the burden is on the plaintiff (R & S) to establish the existence and terms of the contract. Although this is true, *see Perlman v. Time, Inc.*, 133 Ill.App.3d 348, 88 Ill.Dec. 524, 528, 478 N.E.2d 1132, 1136 (1985), as we pointed out above, R & S met its obligation by producing prima facie evidence that the contract was defined by the Purchase Order Documents. If Merit believed that the contract was fully encompassed in the bid package, then it was incumbent upon Merit to make sure that the bid package was part of the record. A second problem with Merit's theory that the bid package contained the terms and conditions of the subcontract is that, at oral argument, Merit's attorney conceded that the bid package merely defined the scope of the work, that is, what construction services were to be performed on the 84 Mining Project. Without a doubt, the scope of the work is an integral part of a construction contract. However, as described by Merit's attorney, the bid package contained none of the many terms—terms regarding insurance, payment schedules, completion dates etc.—that one would expect in a complex construction subcontract worth nearly $2 million. Merit has thus failed to produce any credible evidence to dispute R & S's evidence that the agreement between Merit and R & S contained the General Notes and Conditions, and hence, the forum selection clause. Accordingly, we hold that the district court committed clear error in finding that the subcontract did not contain the forum selection clause. *See Ambrose*, 211 Ill. Dec. at 87, 654 N.E.2d at 549 ("In the absence of evidence to meet a plaintiff's prima facie case, a ruling in favor of the plaintiff is warranted as a matter of law."); Fed. R.Civ.P. 52(a).

Although the forum selection clause clearly specifies the Circuit Court of Cook County, Illinois, as the exclusive forum for resolving the parties' dispute, Merit nevertheless argues that the court need not strictly enforce it. We reject this argument, as it is based on nothing more than a few inapposite cases. Specifically, Merit points to *Na-*

*tional Hydro Sys. v. Summit Constructors, Inc.*, 731 F.Supp. 264 (N.D.Ill.1989), and *G.H. Miller & Co. v. Hanes*, 566 F.Supp. 305 (N.D.Ill.1983). The issue in each of those cases, however, was whether a forum selection clause controlled the court's decision on a motion for a change of venue pursuant to 28 U.S.C. § 1404. The factors that guide a district court's decision on a motion for a change of venue differ from those that guide a decision on a motion for remand based on a forum selection clause. On a motion for a change of venue, a district court considers the plaintiff's choice of forum, the convenience of the parties and the witnesses, as well as the interest of justice. 28 U.S.C. § 1404(a). In contrast, under Illinois law, a court contemplating enforcing a forum selection clause in a contract that was freely entered into between parties of roughly equal bargaining power generally considers only one issue: whether the objecting party would effectively be deprived his day in court. *Calanca*, 109 Ill.Dec. at 402–03, 510 N.E.2d at 23–24. In the present case, although resolving the dispute between Merit and R & S in Illinois may well be less convenient to Merit than resolving the dispute in Pennsylvania, it would not deprive Merit of its day in court. Therefore, there is no basis for not enforcing the forum selection clause.

### III. CONCLUSION

The judgment of the district court is reversed. The case is remanded to the district court with directions to remand the case to the Circuit Court of Cook County, Illinois.

REVERSED AND REMANDED.