**CHATEAU DES CHARMES WINES LTD., Plaintiff–Appellant,**

v.

**SABATE USA INC., Sabate S.A., Defendants–Appellees.**

No. 02–15727.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 31, 2003.

Filed May 5, 2003.

Benjamin M. Zuffranieri, Jr., Hodgson Russ LLP, Buffalo, NY, for the plaintiff-appellant.

David C. Winton, Peter L. Vestal, Sequoia Law Group LLP, San Francisco, CA, for the defendant-appellee.

Before B. FLETCHER, KOZINSKI, and TROTT, Circuit Judges.

## OPINION

PER CURIAM.

Chateau des Charmes Wines, Ltd. ("Chateau des Charmes"), a Canadian company, appeals the dismissal of its action for breach of contract and related claims arising out of its purchase of wine corks from Sabaté, S.A. ("Sabaté France"), a French company, and Sabaté USA, Inc. ("Sabaté USA"), a wholly owned California subsidiary. The district court held that forum selection clauses in the invoices that Sabaté France sent to Chateau des Charmes were part of the contract between the parties and dismissed the case in favor of adjudication in France. Because we conclude that the forum selection clauses in question were not part of any agreement between the parties, we reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The material facts pertinent to this appeal are not disputed.[1] Sabaté France manufactures and sells special wine corks that it claims will not cause wines to be spoiled by "cork taint," a distasteful flavor that some corks produce. It sells these corks through a wholly owned California subsidiary, Sabaté USA.

In February 2000, after some preliminary discussions about the characteristics of Sabaté's corks, Chateau des Charmes, a winery from Ontario, Canada, agreed by telephone with Sabaté USA to purchase a certain number of corks at a specific price. The parties agreed on payment and shipping terms. No other terms were discussed, nor did the parties have any history of prior dealings. Later that year, Chateau des Charmes placed a second telephone order for corks on the same terms. In total, Chateau des Charmes ordered 1.2 million corks.

Sabaté France shipped the corks to Canada in eleven shipments. For each shipment, Sabaté France also sent an invoice. Some of the invoices arrived before the shipments, some with the shipments, and some after the shipments. On the face of each invoice was a paragraph in French that specified that "Any dispute arising under the present contract is under the sole jurisdiction of the Court of Commerce of the City of Perpignan." On the back of each invoice a number of provisions were printed in French, including a clause that specified that "any disputes arising out of this agreement shall be brought before the court with jurisdiction to try the matter in the judicial district where Seller's registered office is located." Chateau des Charmes duly took delivery and paid for each shipment of corks. The corks were then used to bottle Chateau des Charmes' wines.

Chateau des Charmes claims that, in 2001, it noticed that the wine bottled with Sabaté's corks was tainted by cork flavors. Chateau des Charmes filed suit in federal district court in California against Sabaté France and Sabaté USA alleging claims

---

1. We, of course, do not determine the merits of Chateau des Charmes's claims against Sabaté France and Sabaté USA.

for breach of contract, strict liability, breach of warranty, false advertising, and unfair competition. Sabaté France and Sabaté USA filed a motion to dismiss based on the forum selection clauses. The district court held that the forum selection clauses were valid and enforceable and dismissed the action. This appeal ensued.

## DISCUSSION

### I.

Although we review a district court's decision to enforce a forum selection clause for abuse of discretion, *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1174 (9th Cir.2002), whether the parties agreed to a forum selection clause is a question of law that we review de novo. *Cf. Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir.1980) (per curiam) (existence of contract based on undisputed facts is a question of law).[2]

■ The question before us is whether the forum selection clauses in Sabaté France's invoices were part of any agreement between the parties. The disputes in this case arise out of an agreement for a sale of goods from a French party and a United States party to a Canadian party. Such international sales contracts are ordinarily governed by a multilateral treaty, the United Nations Convention on Contracts for the International Sale of Goods ("C.I.S.G."), which applies to "contracts of sale of goods between parties whose places of business are in different States ... when the States are Contracting States." C.I.S.G., art. 1(1)(a), 15 U.S.C.App., 52 Fed.Reg. 6262 (March 2, 1987). The United States, Canada, and France are all contracting states to the C.I.S.G. 15 U.S.C.App. (Parties to the Convention).

And none has acceded to the Convention subject to reservations that would affect its applicability in this case. Moreover, because the President submitted the Convention to the Senate, which ratified it, *see* Public Notice 1004, U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, reprinted in 15 U.S.C.App.; Letter of Transmittal from President Reagan to the Senate of the United States (Sept. 21, 1983), reprinted in 15 U.S.C.App., there is no doubt that the Convention is valid and binding federal law. Accordingly, the Convention governs the substantive question of contract formation as to the forum selection clauses.

Our conclusion that the C.I.S.G. governs the issues in this appeal is not in conflict with authority from our sister circuits that have applied state law. Both the Second Circuit and the First Circuit have confronted the question of what law governs issues of contract formation that are antecedent to determining the validity of and enforcing forum selection clauses. In *Evolution Online Sys. Inc. v. Koninklijke PTT Nederland N.V., KPN*, 145 F.3d 505, 509 (2d Cir.1998), the Second Circuit applied New York law to a dispute between a Dutch company and a New York corporation regarding the production of computer software and the provision of technical services presumably because the Convention does not apply "to contracts in 5904 which the preponderant part of the obligations of the party who furnishes the goods consists in the supply of labor or other services." C.I.S.G., art. 3(2). The First Circuit's decision in *Lambert v. Kysar*, 983 F.2d 1110, 1119 (1st Cir.1993), involved the resolution of an interstate dispute that had no international dimension.

---

**2.** Whether we review under an abuse of discretion standard or a de novo standard, we

reach the same conclusion.

## II.

█ Under the C.I.S.G., it is plain that the forum selection clauses were not part of any agreement between the parties. The Convention sets out a clear regime for analyzing international contracts for the sale of goods: "A contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form." C.I.S.G., art. 11. A proposal is an offer if it is sufficiently definite to "indicate[ ] the goods and expressly or implicitly fix[ ] or make[ ] provision for determining the quantity and the price," id., art. 14, and it demonstrates an intention by the offeror to be bound if the proposal is accepted. Id. In turn, an offer is accepted if the offeree makes a "statement ... or other conduct ... indicating assent to an offer." Id., art. 18. Further, "A contract is concluded at the moment when an acceptance of an offer becomes effective." Id., art. 23. Within such a framework, the oral agreements between Sabaté USA and Chateau des Charmes as to the kind of cork, the quantity, and the price were sufficient to create complete and binding contracts.[3]

The terms of those agreements did not include any forum selection clause. Indeed, Sabaté France and Sabaté USA do not contend that a forum selection clause was part of their oral agreements, but merely that the clauses in the invoices became part of a binding agreement. The logic of this contention is defective. Under the Convention, a "contract may be modified or terminated by the mere agreement of the parties." Id., art. 29(1). However, the Convention clearly states that "[a]dditional or different terms relating, among other things, to ... the settlement of disputes are considered to alter the terms of

the offer materially." Id., art. 19(3). There is no indication that Chateau des Charmes conducted itself in a manner that evidenced any affirmative assent to the forum selection clauses in the invoices. Rather, Chateau des Charmes merely performed its obligations under the oral contract.

Nothing in the Convention suggests that the failure to object to a party's unilateral attempt to alter materially the terms of an otherwise valid agreement is an "agreement" within the terms of Article 29. Cf. C.I.S.G., art. 8(3) ("In determining the intent of a party or the understanding a reasonable person would have had, due consideration is to be given to all relevant circumstances of the case including the negotiations, any practices which the parties have established between themselves, usages and any subsequent conduct of the parties."). Here, no circumstances exist to conclude that Chateau des Charmes's conduct evidenced an "agreement." We reject the contention that because Sabaté France sent multiple invoices it created an agreement as to the proper forum with Chateau des Charmes. The parties agreed in two telephone calls to a purchase of corks to be shipped in eleven batches. In such circumstances, a party's multiple attempts to alter an agreement unilaterally do not so effect. See In re CFLC, Inc., 166 F.3d 1012, 1019 (9th Cir.1999).

## CONCLUSION

Because the contract for the sale of corks did not contain the forum selection clauses in Sabaté France's invoices, there was nothing for the district court to enforce, and its dismissal of this action was

---

**3.** In this respect, the regime of the C.I.S.G. differs from that of the Uniform Commercial Code, which would require a contract for the sale of corks for the value involved here to be evidenced by a writing. See U.C.C. § 2–201.

an abuse of discretion. The action is reinstated.

**REVERSED and REMANDED.**