COMERICA BANK, as agent for itself and for Lasalle Business Credit, Inc., Hsbc Business Credit (USA), Inc., and Gmac Commercial Credit, LLC Plaintiffs,

v.

WHITEHALL SPECIALTIES, INC., Steve Fawcett, Cees Wit, John Lynch, individuals, and Does 1 through 50, inclusive Defendant.

No. EDCV 04–744 RT(SGLX).

United States District Court,
C.D. California,
Eastern Division.

Oct. 28, 2004.

Simon Aron, Lynn J. Harris, Wolf, Rifkin, Shapiro & Schulman, LLP, Los Angeles, CA, for Plaintiff.

Gregory J. Hall, Foley & Lardner LLP, Los Angeles, CA, Naikang Tsao, Foley & Lardner LLP, Madison, WI, for Defendant Arch Wireless Operating Co., Inc.

**ORDER 1) GRANTING PLAINTIFF'S MOTION TO REMAND THIS ACTION TO STATE COURT, AND 2) DENYING DEFENDANT WHITEHALL SPECIALITIES' MOTION TO TRANSFER VENUE AS MOOT**

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered plaintiffs Comerica Bank ("Comerica"), LaSalle Business Credit, Inc. ("LaSalle"), HSBC Business Credit (USA), Inc. ("HSBC"), and GMAC Commercial Credit, LLC ("GMAC") (collectively, "Plaintiffs")'s motion to remand, defendants Whitehall Specialities, Inc. ("Whitehall"), Steve Fawcett ("Fawcett"), Cees Wit ("Wit"), and John Lynch ("Lynch") (collectively, "Defendants")'s opposition, and Plaintiffs' reply. Based on such consideration, the court concludes as follows:

## I.

### BACKGROUND

On October 31, 1998, Comerica, acting as an agent of a bank group comprised of LaSalle, HSBC, GMAC ("Bank Group"), entered into a Credit Agreement ("Agreement") with A & J Cheese Co. ("A & J Cheese"), a company owned and directed by Jack Gaglio ("Gaglio"). Pursuant to the Agreement, the Bank Group agreed to make loans to A & J Cheese from time to time based on its inventory and accounts receivables ("receivables").[1] In return, the Bank Group received a security interest in A & J Cheese's inventory, receivables, and personal property. The Bank Group required A & J Cheese to submit monthly to it receivables reports, which the Bank Group used to determine how much credit to extend to A & J Cheese. To limit the risk of the loan, the Bank Group capped the total number of sales to a single customer that it would rely on to determine how much credit to extend to A & J Cheese. On August 28, 2000, Comerica and A & J Cheese executed a Restated Security Agreement ("Restated Agreement"), which provided that the security interest in A & J Cheese's collateral would be held by Comerica.

---

1. An "account receivable" is "[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services. . ." Black's Law Dictionary 17 (7th ed.1999).

A & J Cheese allegedly created a scheme to increase its loans from the Bank Group and Comerica by making cheese sales that evaded the single customer caps. At some point between 1998 and 2000,[2] Gaglio, the president and principle shareholder of A & J Cheese, met with defendants Fawcett, Wit, and Lynch, all of whom are officers and directors of defendant Whitehall, a Wisconsin manufacturer of cheese substitutes.[3] Fawcett Depo. at 31:8–32:3. The four of them agreed that A & J Cheese would sell cheese to customers through Whitehall. *Id.* A & J Cheese would bill Whitehall for the cheese and send it an invoice. Whitehall would increase the sale price by one penny per pound for its services and send a new invoice to the customer. The shipments of cheese were sent directly from A & J Cheese to the customer. Suprema Specialities, Inc. ("Suprema"), a New Jersey corporation, was the main customer involved in these transactions. A & J Cheese would allegedly submit copies of the Whitehall invoices to the Bank Group and Comerica, which would use them to calculate their periodic loans to A & J Cheese. By avoiding the single customer cap on its sales to customers like Suprema, A & J Cheese received greater loans from the Bank Group and Comerica.

After Suprema went bankrupt in March 2002, A & J Cheese defaulted on its loans from the Bank Group and Comerica. The Bank Group and Comerica lost $46 million in connection with the default. Pursuant to the Restated Agreement, Comerica succeeded to all the rights and remedies of A & J Cheese. At the time of A & J Cheese's default, there were twelve outstanding invoices totaling $1,536,223.29, which has been sent by A & J Cheese to Whitehall. When confronted with these invoices by Comerica, Whitehall claims to have already paid two of the invoices and denied having received the other ten invoices. After Whitehall refused to pay the outstanding invoices, Comerica sued Defendants in the State of California Superior Court, San Bernardino County ("state court"). Specifically, Comerica sued Defendants for (1) breach of written contract, (2) open book account, (3) account stated, (4) quantum meruit, (5) fraud, (6) conspiracy to defraud, (7) conversion, (8) fraudulent transfer, and (9) unjust enrichment.

Defendants removed the case to federal court on the grounds of diversity jurisdiction.[4] Plaintiffs moves to remand the case to the state court based on a forum selection clause in the outstanding twelve invoices sent by A & J Cheese to Whitehall, which states in lower case: "VENUE OF ANY LEGAL ACTION SHALL BE THE SUPERIOR/MUNICIPAL COURT OF THE COUNTY OF SAN BERNARDINO, WEST DISTRICT, STATE OF CALIFORNIA."

## II.

## *ANALYSIS*

### A. Legal Standard for Remand Based on Forum Selection Clause

■ There is a "strong presumption" against removal, and all doubts must be resolved in favor of remand to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The defendant has the burden

---

2. In Fawcett's deposition, he stated that the meeting occurred in approximately 1999, "give or take a year." Fawcett Depo. at 30:2–25. Plaintiffs allege that the scheme begin in or before December 2001.

3. Gaglio had also invested in Whitehall.

4. Plaintiffs allege in their complaint that A & J Cheese is a California corporation, Comerica is a Michigan Corporation, Whitehall is a Wisconsin corporation conducting business in California, and defendants Fawcett, Wit, and Lynch are Wisconsin citizens.

of establishing that removal is proper. *Id.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

■ The enforcement of a forum selection clause is a proper basis for remanding a removed case to state court. *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 275, 280 (9th Cir.1984) (affirming the district court's granting of a "motion to remand to state court on the grounds that the forum selection clause was valid and enforceable"); *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 252 (7th Cir.1996) ("Enforcing a forum selection clause is a permissible basis for remand."). If a forum selection clause is part of a contract, it is prima facie valid and should be enforced "[a]bsent some evidence submitted by the party opposing enforcement of the clause to establish fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court." *Pelleport Investors, Inc.*, 741 F.2d at 280.

■ In deciding whether to remand a case based on a forum selection clause, the court may consider facts outside the pleadings. *See Kelso Enterprises, Ltd. v. M/V Wisida Frost*, 8 F.Supp.2d 1197, 1201 (C.D.Cal.1998).

## B. Plaintiff's Motion to Remand Based on Forum Selection Clause

Plaintiffs contend that this court should remand this case to the state court in accordance with the forum selection clause at the bottom of each of the twelve outstanding invoices. According to Plaintiffs, the invoices are written contracts between A & J Cheese and Whitehall providing that all disputes concerning the invoices should be resolved in the state court. Since Comerica is the successor-in-interest

to A & J Cheese's rights and remedies under the Restated Agreement, Plaintiffs assert, the forum selection clause applies to it in this case. Defendants contend that Whitehall already paid two invoices and never received the other ten invoices, which are fake. As a consequence, Defendants assert that the forum selection clauses in the invoices are not binding on them.

The Seventh Circuit has addressed the issue whether a contract existed between two parties such that its forum selection clause required remand to state court. In *Roberts & Schaefer Co.*, 99 F.3d at 249–51, plaintiff Roberts & Schaefer ("R & S") was an Illinois contractor that sued defendant Merit, a Pennsylvania construction company, for breach of contract in Illinois state court. After securing a contract "to design and build a raw coal storage and handling facility," Merit submitted a bid of $1.775 million to work on the project, which R & S accepted verbally. *Id.* at 250. R & S sent several "Purchase Order Documents" to Merit, one of which was a "General Notes and Conditions" document that included a forum selection clause: "'all disputes between the parties hereto shall be governed by and construed according to the laws of Illinois whose Circuit Courts shall have exclusive jurisdiction to determine all such issues.'" *Id.* R & S brought suit when Merit failed to meet its construction deadlines.

Merit removed the case to federal court on the basis of diversity jurisdiction, but R & S moved to remand the case to state court based on the forum selection clause in the Purchase Order Documents. *Id.* at 251. The district court denied Merit's R & S's motion to remand because it found that "Merit's continued performance was entirely consistent with the agreement formed upon R & S's acceptance of Merit's bid" and the forum selection clause therefore never was part of their agreement.

*Id.* On appeal, the parties agreed that Illinois law governed the issue of whether a contract existed between them. *Id.* at 251. The primary issue was "whether the forum selection clause in the General Notes and Conditions [in the Purchase Order Documents] was ever part of the parties' contract." *Id.* at 252. The Seventh Circuit concluded that the Purchase Order Documents constituted an offer and Merit's conduct after receiving the documents demonstrated that it accepted and performed according to the terms of R & S's Purchase Order Documents. *Id.* at 252. In doing so, the Seventh Circuit rejected Merit's argument that it was performing pursuant only to the earlier oral contract. *Id.* The Purchase Order Documents constituted a written contract with the forum selection clause and was therefore valid. *Id.* at 253. The Seventh Circuit also found that the forum selection clause was enforceable. *Id.* at 254. As a result, the Seventh Circuit remanded the case to the district court with directions to remand the case to state court. *Id.*

■ The approach taken by the Seventh Circuit in *Roberts & Schaefer Co.* provides guidance in the instant case. Similar to *Roberts & Schaefer Co.*, the primary question here is whether the invoices, including the forum selection clauses therein, constituted a written agreement between A & J Cheese and Whitehall, such that Comerica could enforce it as a successor-in-interest to A & J Cheese. While federal law governs questions concerning the interpretation and enforcement of forum selection clauses, *Kelso Enterprises, Ltd.*, 8 F.Supp.2d at 1201, federal courts involved with diversity actions apply state law to determine whether a contract that included a forum selection clause existed in the first place. *See Roberts & Schaefer Co.*, 99 F.3d at 251. This court will apply California contract law to decide whether there was such a contract between A & J Cheese and Whitehall based on the invoices and

Whitehall's conduct in response to the invoices.

The California version of the Uniform Commercial Code ("U.C.C.") applies to contracts for the sale of goods. Cal. Com. Code § 2102. In this case, the invoices concerned the sale of A & J Cheese's cheese product through Whitehall to customers like Suprema. Since the transaction was for the sale of goods, California's U.C.C. applies here.

Under California's U.C.C., "[a] contract for the sale of goods may be made in any manner sufficient to show agreement." Cal. Com.Code § 2204(1). Offers to make a contract invite acceptance by any reasonable manner or medium. Cal. Com.Code § 2206(1)(a). "An agreement modifying a contract within this division needs no consideration to be binding." Cal. Com.Code § 2209(1). Although California's U.C.C. does not require consideration to modify a contract, Cal. Com.Code § 2209(1), "a valid modification still requires proof of the other elements essential to the validity of a contract, including mutual assent." *PMC, Inc. v. Porthole Yachts, Ltd.*, 65 Cal. App.4th 882, 887, 76 Cal.Rptr.2d 832, 834 (1998). "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." Cal. Com.Code § 2208(1).

At the meeting that took sometime between 1998 and 2000, Gaglio made an offer to Fawcett, Wit, and Lynch to enter into a contract where A & J Cheese would send an invoice for the sale of cheese to Whitehall and Whitehall would send the invoice on to another customer after adding a penny per pound to the sale price. Fawcett Depo. at 31:8–32:3. Fawcett, Wit, and Lynch accepted Gaglio's offer. *Id.* at

32:2–3. Although oral contracts for sale of goods $500 or more generally must be in writing, Cal. Com.Code § 2201(1), this oral contract falls within the Statute of Frauds because Fawcett admitted to the oral contract in his deposition, Cal. Com.Code § 2201(3)(b), and the contract was actually performed as agreed, Cal. Com.Code § 2208(3)(c). This oral contract. was essentially a side agreement between A & J Cheese and Whitehall where Whitehall would act as a middleman in the sale of A & J Cheese's cheese to its customers like Suprema by means of written invoices and bills of lading.

■ In each transaction between A & J Cheese and Whitehall, A & J Cheese would send Whitehall an invoice and a bill of lading. The invoice and bill of lading were a written expression of the oral side agreement between A & J Cheese and Whitehall. Between 2000 and 2002, A & J Cheese and Whitehall engaged in a large number of these transactions. *See* Ryan Decl. ¶ 8; Aron Decl. Exh. B. The A & J Cheese invoices included a forum selection clause providing for the resolution of "ANY LEGAL ACTION" in the state court. Aron Decl. Exh. B. The forum selection ·clause was not hidden in the invoice, rather it was clearly written at the bottom of the invoice in bold type. *Id.* During the course of performing this contract, A & J Cheese repeatedly sent this invoice containing the forum selection clause to Whitehall and Whitehall repeatedly performed its contractual obligations without objecting to the forum selection clause despite numerous opportunities to do so. As a consequence, this court concludes that Whitehall accepted and acquiesced to the forum selection clause contained in the invoices and by so doing impliedly agreed to such clause being part of its oral agreement with A & J Cheese as to the manner in which the invoices would be processed.[5] Such inclusion involves a modification. Cal. Com.Code §§ 2208(1), 2209(1); *see also Roberts & Schaefer Co.*, 99 F.3d at 252 (finding that the forum selection clause in the "General Notes and Conditions" document to be part of the contract between R & S and Merit due to Merit's conduct of performance after having received the document).[6]

Defendants cite *Chateau des Charmes Wines, Ltd. v. Sabate USA, Inc.*, 328 F.3d 528 (9th Cir.2003), in support of their argument that the forum selection clause is not a part of the oral contract between A & J Cheese and Whitehall. In that case, the Ninth Circuit addressed the issue of whether invoices containing a forum selection clause modified an oral sales contract under the United Nations Convention on Contracts for the International Sale of Goods ("C.I.S.G."). *Id.* at 531. Chateau

---

**5.** The facts of this case do not include a "battle of the forms," so Cal. Com.Code § 2207 would not operate here to knock out the forum selection clause. *Cf. Gen. Instrument Corp. v. Tie Mfg., Inc.*, 517 F.Supp. 1231 (S.D.N.Y.1981).

**6.** Defendants Fawcett, Wit, and Lynch argue that even if Whitehall is bound by the forum selection clause, they are not because they never entered into any contract that included a forum selection clause. In the Ninth Circuit, forum selection clauses can be applied to non-parties to a contract where "the alleged conduct of the non-parties is so closely related to the contractual relationship." *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988). Here, the individual defendants are closely related to the contractual relationship because they are the owners and directors of Whitehall, one of the parties to the contract. The forum selection clause can therefore be applied to them as well. *See TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir.1990) ("It is not unreasonable or unjust to enforce the [forum selection] clause even though some of [the individual defendants] did not sign the agreement.").

Des Charmes, a winery in Ontario, Canada, orally agreed over the telephone to purchase a number of corks from Sabate USA. *Id.* at 529. Sabate France made eleven shipments of corks to Chateau Des Charmes, each of which contained an invoice with a forum selection clause providing for the resolution of disputes in "the Court of Commerce of the City of Perpignan." *Id.* Chateau Des Charmes found tainted corks and sued Sabate USA and Sabate France for breach of contract, among other claims, in federal district court in California. Sabate USA and Sabate France moved to dismiss based on the forum selection clause, which the district court granted. *Id.*

The Ninth Circuit found that Sabate USA and Sabate France had attempted to modify their oral agreement with Chateau Des Charmes by including a forum selection clause in the invoices. *Id.* at 531. The Ninth Circuit noted that the C.I.S.G. allowed for the modification of a contract based on the "mere agreement" of the parties. *Id.* (quoting C.I.S.G. art. 29(1)). The C.I.S.G. also specifically provided that the modification of a contract to include a forum selection clause was a material alteration. *Id.* Considering the facts of the case, the Ninth Circuit stated that "[n]othing in the Convention suggests that the failure to object to a party's unilateral attempt to alter materially the terms of an otherwise valid agreement is an 'agreement' within the terms of Article 29." *Id.* According to the Ninth Circuit, there was "no indication that Chateau des Charmes conducted itself in a manner that evidenced any affirmative assent to the forum selection clauses in the invoices." *Id.* The Ninth Circuit rejected the notion that, pursuant to the C.I.S.G., Chateau des Charmes accepted the offer merely by performing its obligations under the oral contract. *Id.* Since the forum selection clause was not part of the contract, the Ninth Circuit reversed the district court's dis-

missal of the case based on the forum selection clause. *Id.* at 531–32.

This court finds that *Chateau des Charmes Wines, Ltd.* is distinguishable from the instant case. The Ninth Circuit decided that case pursuant to the C.I.S.G., which did not allow for the modification of a contract by one party failing to object to the other party's unilateral attempt to modify its terms. *Id.* at 531. This case, however, is governed by California's U.C.C., which states that "[w]here the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." Cal. Com.Code § 2208(1). California's U.C.C. also does not expressly provide that the modification of a contract to include a forum selection clause is a material alteration of the contract. Here, Whitehall accepted and acquiesced to A & J Cheese's repeated inclusion of a forum selection clause in the invoices because Whitehall failed to object to it despite numerous opportunities do so. Due to these material differences between the C.I.S.G. and California's U.C.C., *Chateau des Charmes Wines, Ltd.* does not control this case.

██ Defendants argue that the forum selection clauses are invoice specific and, since they never received the outstanding invoices, the forum selection clauses on those invoices cannot be enforced. In making this argument, they cite the costs and attorney's fees clause preceding the forum selection clause, which states in lower case: "IT IS UNDERSTOOD THAT IF IT BECOMES NECESSARY TO ENFORCE COLLECTION OF THE AMOUNT OF *THIS INVOICE,* OR ANY PART THEREOF, PURCHASER AGREES TO PAY ALL COSTS AND

REASONABLE ATTORNEY'S FEES." Aron Decl. Exh. B–3 (emphasis added). Unlike the costs and attorney's fee clause, however, the forum selection clause has no such limiting language: "VENUE OF *ANY* LEGAL ACTION SHALL BE THE SUPERIOR/MUNICIPAL COURT OF THE COUNTY OF SAN BERNARDINO, WEST DISTRICT, STATE OF CALIFORNIA." *Id.* (emphasis added). This language, which appeared on all the invoices and which Whitehall accepted and acquiesced to through A & J Cheese's course of performance, does not make the forum selection clause invoice specific.

Defendants also argue that there was no contract because they never received ten of the outstanding invoices, those invoices were fake, and they paid the other two outstanding invoices. These arguments relate to the merits of Plaintiffs' claims and do not change the fact that Whitehall's course of performance showed that it accepted and acquiesced to A & J Cheese's inclusion of the forum selection clause in the invoices.

██ Finally, Defendants argue that the forum selection clause can only govern Plaintiff's contract claims, not its torts claims. "[F]orum selection clauses can be equally applicable to contractual and tort causes of action." *Manetti–Farrow, Inc.,* 858 F.2d at 514. "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of contract." *Id.* In the instant case, Plaintiff sued for fraud, conspiracy to defraud, conversion, and fraudulent transfer. The resolution of all these tort claims will "require interpretation of the contract," *id.,* to determine whether the oral agreement between A & J Cheese and Whitehall was actually a valid sales agreement or just a side agreement created so that A & J Cheese could receive greater loans from the Bank Group and Comercia. Plaintiffs' tort claims will therefore be remanded to state court.

Defendants have failed to meet their burden of showing that removal is proper. *Gaus,* 980 F.2d at 566. Since the forum selection clause was part of the contract between A & J Cheese and Whitehall, and Comercia is the successor-in-interest to A & J Cheese through the Restated Agreement, the court finds that this case should be remanded to state court based on the forum selection clause.[7]

## III.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT:

1) Plaintiff Comerica Bank's, LaSalle Business Credit, Inc.'s, HSBC Business Credit (USA), Inc.'s, and GMAC Commercial Credit, LLC's motion to remand is GRANTED;

2) Defendant Whitehall Specialities, Inc.'s motion for transfer venue is DENIED as moot;

3) This case is remanded to the State of California Superior Court, San Bernardino County, Rancho Cucamonga District.[8]

---

7. Defendants do not dispute that Comercia is the successor-in-interest to A & J Cheese's rights and remedies pursuant to the Restated Agreement. Nor do they argue that the forum selection clause is unenforceable due to fraud, undue influence, overweening bargaining power, or serious inconvenience. *See Pelleport Investors, Inc.,* 741 F.2d at 280.

8. Plaintiff's motion for leave to file an amended complaint, Defendant Whitehall Specialties motion for summary judgment, and Defendants Fawcett's, Wit's, and Lynch's motion

to dismiss for lack of personal jurisdiction or failure to state a claim may be renoticed in state court.